# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1856, AT CAMBRIDGE.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. BENJAMIN F. THOMAS, } Justices.
Hon. PLINY MERRICK,

---

### CHELMSFORD COMPANY *vs.* SAMUEL C. DEMAREST.

The sureties on the bond of the treasurer of a manufacturing corporation, who, by the Rev. Sts. c. 38, § 4, is to be " chosen annually " and "hold his office until another is chosen and qualified in his stead," are bound only for the year for which he was chosen, and for such further time as is reasonably sufficient for the election and qualification of his successor, and no longer, although the corporation fail to elect at their next annual meeting.

The admissions of a treasurer of a manufacturing corporation, made after the termination of his service, as to his own defaults, are not admissible in evidence against a surety on his bond, in an action against the latter alone.

ACTION OF CONTRACT against Samuel C. Demarest on a bond dated September 1st 1845, and executed by Henry D Phelps

as principal, and the defendant and others as sureties, the con-dition of which was that "whereas said Phelps has heretofore been chosen treasurer of said company, now therefore if said Phelps, during his continuance in said office, shall faithfully and punctually perform all the various duties incumbent on him in his said capacity, and shall account from time to time for all moneys and funds of said company that may come to his hands as treasurer, and if, on ceasing to hold said office, he shall deliver over to the directors of said company, or to his successor, all books, records and papers, belonging to said office, in his posses-sion or custody, and all money, notes, securities or funds that may then be in his hands or control, then the foregoing obliga-tion shall be void, otherwise of full force." Trial before *Dewey*, J., who made a report thereof to the full court, the substance of which is stated in their opinion.

This case was argued at October term 1855 by *J. G. Abbott*, for the plaintiffs, and *A. A. Ranney*, for the defendant.

SHAW, C. J. This is an action on a bond given to the plain-tiffs as a manufacturing corporation by Henry D. Phelps their treasurer, with sureties, conditioned for the faithful performance of his duty as such treasurer. The suit is against the defendant Demarest, one of the sureties, alone.

It appears by the report of the case, that Phelps was first chosen to the office in August 1845, at a special meeting, to fill a vacancy occasioned by the resignation of the treasurer chosen at the previous annual meeting in May. On the occasion of this election the bond now in suit was given, and no bond was given afterwards. At the next annual meeting in 1846, Phelps was reëlected. In 1847, no one appears by the record to have been elected. In 1848, 1849, 1850, 1851 and 1852, Phelps was elected, but gave no new bond, and none was required by the directors; and no reason appears why it was not done. Phelps continued to act as treasurer until 1852. It further appears, though the fact does not seem to be material, that Phelps was clerk of the corporation, duly chosen and qualified, when he was elected treasurer, and continued to be annually chosen and to act as clerk until 1852.

The defence relied on is, that the office of treasurer is an annual office, by law, that Phelps was chosen for one year, that the defendant became surety for him during the continuance of that official year only, and that for any default or misconduct after Phelps's reëlection for another year the defendant was not responsible.

But the plaintiffs rely upon the terms of the Rev. Sts. c. 38, § 4, being the act in force at the time of Phelps's election, regulating manufacturing corporations, which, after directing that the clerk and treasurer shall, like other officers, be chosen annually, adds, "and shall hold their offices until others are chosen and qualified in their stead."

The court are of opinion that under the direction of this law, Phelps was elected as treasurer to an annual office; that the bond was a collateral security for the faithful performance of the duties of that office; and that such office being annual, such duties are limited to the term of a year. But in fixing it to one year, we do not understand the statute to mean an exact calendar year, or the number of days constituting an astronomical year. It is to be expounded according to the subject matter, and therefore it must be construed to be for the official year of such corporation or body politic as holds annual meetings, the official year being the term ordinarily from one annual meeting to another. Where the annual meeting is held on a given day of a week and month, as on the fourth Monday of March, the intervals will not be precisely equal, or whenever the time for the annual meeting is legally changed, as it was done in regard to the plaintiff corporation, an official year may be lengthened or shortened.

Nor do we think that the further provision above cited—"shall hold their offices until others are chosen and qualified"—substantially changes the character of the office from an annual one to one for an indefinite time.

Perhaps a bond might be framed, reciting that whereas the principal has been elected to the annual office of treasurer, and conditioned for his faithful performance of his duties for that term, and for such further time as he might continue to hold the

same by annual reëlection—such contract being clear and ex-plicit as to the intent, and made by parties competent to bind themselves—and they remain bound, not because the office was not annual, but because they had anticipated future elections, and provisionally bound themselves accordingly. But the au-thorities are uniform, that, when the office is annual, the parties to the bond are presumed, by law, to bind themselves accord-ingly, if there are no words inserted in the bond, clearly ex-tending it to a future election. *Hassell* v. *Long*, 2 M. & S. 363.

What then, is the legal effect of the added clause, " until others are chosen and qualified." To give it the construction contended for by the plaintiffs would annul the previous clause, making it annual. But both are embraced in the same sen-tence, they are equally imperative and obligatory, and, if possible, both must have their natural effect. Looking again at the sub-ject matter, and supposing the legislature to have had in view the actual condition of manufacturing corporations, and their practical working as bodies politic, organized by law, it seems to us that the law regarded these as annual offices ; but regard-ing the inconvenience which would arise, if one were to termi-nate before the other commenced, one was made to continue and terminate at the same precise point of time at which the other commenced, and thus avoid any interval. But some time must elapse after the reëlection, to enable the officer elect to express his acceptance, and some further time, if giving bond is a neces-sary qualification, to enable him to procure the execution of the bond. The law having directed that such officer shall be chosen annually, or at the annual meeting, it assumes and presupposes that such direction will be complied with, and then the words in question must be construed to mean, till the next annual meet-ing, or meeting at which such annual election is to be made, and such reasonable time afterwards as shall be sufficient to enable the officer elect to procure and deliver his bond, and do whatever else is required to complete his qualification ; or if he fails thus to qualify, until the corporation can elect another and cause him to be qualified. In this way both parts of the provision of the statute will have their legal and proper effect.

But if the corporation fail to comply with their legal duty of electing a treasurer annually, or if they fail to comply with a provision of law made for their benefit, and do not require him to give bond within a reasonable time after he has signified his acceptance of the election, and especially if they permit him to go on and act in the office, during the whole year, and for succeeding years, without giving bond, whatever other effect such a course may have on the rights and liabilities of the corporation, it cannot enlarge or vary the obligation of those who have become responsible for the conduct of such officer, in performing the duties of an annual office.

To avoid misconstruction, it is proper to say, that very different considerations would govern, if the question were, whether the corporation were bound by the acts of an officer thus by their permission exercising the office *de facto.* It is their duty and privilege to see that he is duly elected and qualified; if he is not so, the facts cannot ordinarily be known to the public dealing with him as such, they hold him out as their officer, and it would be permitting them to take advantage of their own wrong, if they could repudiate his official acts. *Hastings* v. *Blue Hill Turnpike,* 9 Pick. 80.

In one of the earliest Massachusetts cases on this subject, *Bigelow* v. *Bridge,* 8 Mass. 275, it does not distinctly appear what the provision of law was, under which the county treasurer was appointed; but upon turning to the *St.* of 1785, *c.* 76, § 1, we find the provision is, that the county treasurer " shall continue in the said office for the term of one year, and until some other person shall be chosen and qualified;" there being also a provision for an annual election. That case, therefore, is an authority to the point, that when these words are added, the office does not cease to be an annual office, and that the bond to perform its duties covers the official acts for one year only, though the action was against the principal alone.

We refer to the usual authorities, to show that, when the office is in fact annual, although not so recited in the bond, still the bond only covers the official acts of the year for which it is given. *Arlington* v. *Merricke,* 2 Saund. 411. *Liverpool Water-*

1 *

*works* v. *Atkinson*, 6 East, 507. *Wardens of St. Saviour's* v. *Bostock*, 2 N. R. 175. *Hassell* v. *Long*, 2 M. & S. 363. *Peppin* v. *Cooper*, 2 B. & Ald. 431.

We have referred to the cases cited and mainly relied on by the plaintiffs, but we do not think they are in conflict with the present decision. In *Dedham Bank* v. *Chickering*, 3 Pick. 335, there was nothing in the statute, or in any by-law or vote of the corporation, to make the office of cashier an annual office, though annual elections were usually made by the directors, but no new bond given ; and, what was very material, the condition of the bond first given in terms bound the obligors for the good behavior of the cashier till a successor should be appointed. In *Revere* v. *Boston Copper Co.* 15 Pick. 351, it was held only, that a failure to choose officers annually did not dissolve the corporation. In the case of *Boston Glass Manufactory* v. *Langdon*, 24 Pick. 49, the same point was decided.

The case of *Amherst Bank* v. *Root*, 2 Met. 522, was decided on the specific ground that, under the law as it then stood, directors had power to appoint a cashier, clerks and other officers, who should "retain their places until removed therefrom, or others are appointed in their stead." *St.* 1828, *c.* 96, § 9. Under that statute, it was held by a majority of the court, that the office thus constituted was not an annual office, but indefinite as to time, although it was stated in the directors' minutes that he was chosen " for the year ensuing." There was no recital in the bond, that the cashier was chosen for one year, or indicating it to be an annual office, and the statute did not so limit it. Mr. Justice Dewey, who dissented on one point only, was of opinion, that it was competent for the directors to limit the office to one year, and that they had done so by their votes, and therefore that the office in that case was annual. But all the judges concurred in the opinion that where by the legal constitution of the office it is annual, whether recited or not, the bond conditioned for the faithful performance of the duties of the office, though general in its terms as to time, binds the obligors only for the duties to be performed within one year.

The court are therefore of opinion, that the plaintiffs can re-

Chelmsford Company *v.* Demarest.

cover, in this action, those damages only, if any, which the plaintiffs sustained by the misconduct of the principal during the first year for which he was elected treasurer.

Another question came up, and is thus stated in the report: The plaintiffs offered in evidence a letter of Phelps, written to one of the directors of the corporation and sureties on the bond, in November 1852, after Phelps had left the service of the corporation, and with his family had departed from the State. Said letter purported to contain admissions of Phelps, in regard to his having wrongfully appropriated moneys of the plaintiffs to his own use, from time to time, while he was acting as treasurer, including 1845, his first official year. The question of the competency of this evidence was reserved.

The court are of opinion that, in this suit against one of the sureties alone, a letter thus written, after the service had ceased, was not competent. *Smith* v. *Whittingham*, 6 Car. & P. 78, and cases cited. It does not appear that Phelps is dead; and as interest, by the law as it now stands, does not render a witness incompetent, we do not see why Phelps himself could not be examined.

The case of *Amherst Bank* v. *Root*, before cited, was relied on as an authority for the plaintiffs, where the admissions of the cashier were received. But it was so held, expressly on the ground that the suit was a joint action against principal and surety, and the evidence was plainly competent as against the principal, being his own admissions.

*Case referred to an assessor.*