No. 2381.

THE TEXAS WESTERN RAILWAY COMPANY v. MARY F. GENTRY, ADMINISTRATRIX, ET AL.

1. CONTRACT—RAILWAY COMPANY—One, owning the property and franchises of a railway company, contracted to sell them to another in consideration that the purchaser was to pay a designated sum in cash (which was paid) and to deliver to the vendor certain shares of stocks and bonds of a new company to be organized under the franchise. The new company was organized, and the vendee assigned his contract to a construction company for the benefit of the new company, which had acquired the rights of the construction company. The newly organized company, by appropriate resolutions, accepted a conveyance of the property, in fulfilment of the contract, and agreed to deliver the shares of stock and bonds.. In a suit against the company for specific performance of the contract, *held*, that the newly organized company was estopped to deny its substitution to the performance of the contract. The agreement to deliver the stocks and bonds was the promise of the new company and was a sufficiently valid consideration.

2. LIMITATION. — The resolutions of the new company were reduced to writing, signed by the president and secretary of the company, with the seal of the company, a copy of which, attested and signed by the secretary, was delivered to the vendor, and by him placed on record. The resolution constituted a contract in writing, within the meaning of article 3205, Revised Statutes, on which an action might be brought at any time within four years thereafter.

3. SAME.—Such a resolution is a contract in writing, within the meaning of the statute of limitations, when it shows from its terms that it is intended as the final acceptance of a previous agreement.

4. ASSIGNMENT OF CHOSES IN ACTION.—A partial assignment of a chose in action is good in equity, though the legal title remains with the assignor, and such holder of the legal title may sue thereon in his own name. The equitable owner is a proper but not necessary party, unless the debtor have some legal defense as against him alone.

5. ESTOPPEL—CORPORATION.—Though a corporation may exceed its charter power in making a contract, yet, when the contract is executed and the company has received its benefits, it is estopped to deny the authority to make it. This rule applied to a case where the contract was within the general scope of the corporate authority, but not in accordance with the mode prescribed for its execution.

6. EQUITABLE MORTGAGE.—If one, under a promise to execute a mortgage to secure the payment of the thing purchased, go into possession of the property, and after using it fails to execute the mortgage, the promise to make it is in equity deemed equivalent to a mortgage as between the parties.

40

7. WARRANTY.—One who accepts a deed with full knowledge of an incumbrance or adverse claim which may affect his interest in the property purchased, can not set up a breach of warranty until the adverse claim is established.

8. JUDGMENT—DAMAGES.—In a suit against a corporation for damages for its failure to deliver bonds under a contract, and to recover the principal and interest due, the plaintiff is entitled, on a recovery, in the absence of evidence as to the value of the bonds, to judgment for the full amount of the bonds and interest.

9. PRACTICE—ASSIGNMENTS OF ERROR.—The Supreme Court will not refuse to consider assignments of error filed after the filing of the writ of error bond, unless it appears that such assignments have operated to the prejudice of the opposing party.

ERROR from Harris. Tried below before the Hon. James Masterson.

*Stewart & Breaker,* and *Ballinger, Mott & Terry,* for plaintiff in error: The conveyances by Gentry, and the Reorganization Executive Committee could constitute no consideration for the resolution of the Texas Western Railway Company, and the promise or contract therein contained, because Gentry was required by the terms of the contract with Honore (afterwards assigned to the Construction Company) to make and have made, and deliver to the Railway Company such conveyances, irrespective of any resolution or promise that the Railway Company might or might not adopt or make to said Gentry; the Texas Western Railway Company was not a party to the Gentry-Honore contract, and it was not contemplated in said contract that it should deliver the bonds to Gentry, but to the Construction Company, and if in the opinion of the Construction Company, Gentry had complied with his part of said contract, then the Construction Company should deliver the bonds to Gentry, citing James v. Fulcrod, 5 Texas, 519; Jones v. Holliday, 11 Texas, 415; Scott v. Atchison, 36 Texas, 77; Jones v. George, 61 Texas, 364; Parsons on Contracts, seventh edition, page 457, (bottom paging); Jones on Mortgages, section 1368; Wittier on Mortgage Foreclosures, pages 29, 32.

The resolution of the directors of the Texas Western Railway on the record thereof is not such a contract in writing, signed by an officer or officers authorized to bind the company thereby, as is contemplated by the four year statute of limitation. (Rev. Stats., arts. 3203, 3205; Martin v. Roberts, 57 Texas, 567.)

Mrs. Gentry, as administratrix of the estate of A. M. Gentry,

deceased, could recover, if at all, only on so many of the bonds as he was entitled to at the time of his death, and not on those which he had assigned and sold absolutely to Young, Chew and others. (Rev. Stats., art. 267; Devine v. Martin, 15 Texas, 29; Mims v. Swartz, 37 Texas, 13; Jones v. George, 61 Texas, 364; Ogden v. Slade, 1 Texas, 15; Merlin v. Manning, 2 Texas, 351; Smith v. Clopton, 4 Texas, 115; Melrose v. Clark, 11 Indiana, 385; 12 Indiana, 398; 17 Illinois, 371; 1 Minnesota, 92; 2 Parsons on Notes and Bills, 47, and note e; Myers's Digest, title "Parties;" Id., title "Parties Plaintiffs," 873; Randon v. Barton, 4 Texas, 290; Pomeroy's Remedies, sec. 99.)

No resolution of a board of directors of a railroad company can have the effect of creating or fixing a lien or mortgage on the property of the company until it has been ratified by the stockholders in the manner required by the statutes for the execution of mortgages on railroads and the increase of their capital stock. (Rev. Stats., arts. 4220, 4221, 4145–4147.)

If Gentry was entitled, by virtue of his conveyance to defendant, to a vendor's lien for the unpaid purchase money, it was only on the exact property conveyed by him to defendant, and did not attach to the twelve miles of road and Brazos river bridge, and other property built or acquired by defendant, not from him but from others since his said conveyance. (Autrey v. Whitmore, 31 Texas, 627.)

The judgment is not responsive to the pleadings of plaintiff, in that it attempts to find for and allow plaintiff the value in money of the bonds claimed in her said petition, whereas in said petition she neither alleges that said bonds were of any value nor prays for any judgment for their value in money. (Hall v. Jackson, 3 Texas, 305; Graves v. Farquhar, 20 Texas, 455; Goodlet v. Stamps, 29 Texas, 123.)

*Hutcheson, Carrington* and *Sears,* for defendant in error.

GAINES, ASSOCIATE JUSTICE. The defendant in error, Mary F. Gentry, as administratrix of the estate of A. M. Gentry, deceased, brought this suit against the plaintiff in error, a railroad corporation organized under the general laws of this State, alleging in substance, that her intestate in his lifetime entered into a contract with one Honore by which he agreed to transfer to the latter the property and franchises of The Texas Western Narrow Guage Railway Company, free from all incumbrances;

that Honore, in consideration of the transfer, was to pay her
intestate certain sums in cash, and to deliver to him certain
shares in a new company to be organized to operate the railroad,
and that in addition thereto he was to secure bonds to the new
corporation to the amount of two hundred thousand dollars,
secured by a mortgage upon its property, running twenty years
and bearing six per cent interest payable semi-annually. It
was also alleged that Honore assigned his interest in this con-
tract to The Texas Western Construction Company, and that
at its request Gentry executed the contract on his part by trans-
ferring the property described therein to the plaintiff in error,
and that the latter accepted the conveyance by a resolution of
its board of directors entered in its minutes on the books of the
corporation; paid the cash and delivered the stock according
to the terms of the contract and stipulated in the resolution
to immediately deliver the bonds. It was also averred that
the bonds had never been delivered though often demanded;
that the affairs of the company were being negligently and
fraudulently managed, and that it was insolvent. The petition
claimed an equitable mortgage upon the property of the de-
fendant for the amount of the bonds and interest, and also a
vendor's lien upon the same, and prayed judgment and fore-
closure. There was also a prayer for the appointment of a re-
ceiver, and an appointment was made by an interlocutory order.
Upon the trial a judgment was rendered in favor of defendant
in error, Mary F. Gentry, as administratrix, for the full amount
of the bonds and interest, and this was decreed to be a prior lien
upon the property of plaintiff in error; which was ordered to be
sold by the receiver as a special commissioner and the proceeds
paid into court. No appeal having been perfected, the property
was sold and realized the sum of one hundred and forty thou-
sand and five hundred dollars. Subsequent to the sale of the
property and a decree distributing the proceeds, this writ of
error was sued out.

The petition was excepted to on the ground "that it shows no
contract existing between A. M. Gentry and defendant for the
payment or delivery by defendant to Gentry of any cash, bonds
or stocks, but the contract was between said A. M. Gentry and
The Texas Western Construction Company, and that plaintiff's
right of action * * * is against said Construction Company
and not against this defendant." This and other exceptions
raising the same question were overruled by the court, and that

ruling is assigned as error.   The conveyance of the property transferred to the defendant by Gentry's deed was certainly a sufficient consideration for its promise to deliver the bonds, and hence we presume the exception is based upon the theory that Gentry, having promised to convey the same property to the Construction Company, and that contract being still in force, he had no power to convey to defendant.   But the Construction Company could have released Gentry from the agreement which had been assigned to it, or at least, with Gentry's consent, could have substituted defendant to its rights under the agreement. The petition avers "that he executed the deed to The Texas Western Railway Company, at the special instance and request of The Texas Western Construction Company." Such being the fact, as admitted by the demurrer, the latter company is clearly precluded from objecting to the conveyance as made.

A similar question is presented by the assignment that the evidence was insufficient to support the finding of the court, because it shows no consideration for the promise of the defendant to deliver the bonds to Gentry.   The minutes of the proceedings of the meeting of the directors of The Texas Western Railway Company, relating to this matter, was read in evidence, and is as follows:   "Judge Ballinger, as counsel for The Texas Western Construction Company, at the request of the president, explained to the board the nature of the negotiation, which had been for some time pending, concerning the sale of the Texas Western Narrow Gauge Railroad, stating that he had prepared a resolution which, if adopted, would complete the transaction." The minutes then show that the resolution was then read and was unanimously adopted.   We quote a part of the resolution: "Resolved, That the Texas Western Railway Company does now make and conclude the purchase from the said Gentry, of and acquire the title to all and singular the property and premises, and that the conveyance from A. B. Sterne, J. L. Spofford and J. C. Chew, styled Reorganization Executive Committee, made the eleventh day of May, 1881, to this company delivered this day by the said Gentry, and the conveyance from the said Gentry made third day of June, 1881, to this company, also delivered this day, from him to this company, are hereby accepted as conveyances therefor.   *   *   *   That, in consideration therefor, the treasurer of this company shall pay to the said Gentry [here follows a description of the money and stock to be paid].   That this company will issue, immediately on the execution thereof,

and deliver to the said Gentry one hundred and sixty thousand dollars ($160.000) in its first mortgage bonds, and forty thousand dollars in its income bonds, said bonds at par, in accordance with and in fulfilment of the terms of agreement between him and H. H. Honore, assigned to the Texas Western Construction Company." The evidence does not clearly disclose the relations between the Construction Company and the railway company; but the inference is clear from these proceedings that Honore had assigned his contract to the former for the benefit of the latter, or that some subsequent arrangement had been made by which the railway company had acquired the rights of the Construction Company under the Honore contract. At all events, the defendant company, having accepted a conveyance of the property in fulfilment of that contract, and having impliedly asserted the assent or request of the Construction Company to the arrangement; and having agreed to pay the money and deliver the stock and bonds which were agreed to be paid and delivered as consideration therefor, is estopped to deny the consent of the Construction Company to the substitution. The agreement to deliver the bonds was the promise of the defendant corporation, and was supported by a valid consideration, as appears both by the pleadings and evidence, and the court did not err in so holding.

The resolution accepting Gentry's conveyance was passed June 3, 1881, and this suit was instituted June 24, 1884. The statute of limitations of two years was pleaded in the court below, both by exception and by answer, and it is now insisted that the court erred in not sustaining that defense. The minutes of the meeting at which the resolution was passed was signed by the president and secretary of the corporation with the seal of the company. A copy, attested and duly acknowledged by the company, was delivered to Gentry, and was subsequently placed upon record. The question is: Was this "a contract in writing," within the meaning of article 3205 of the Revised Statutes, upon which an action may be brought at any time within four years? It is held in several cases that a resolution of the board of' directors, or other lawfully constituted governing body of a corporation, duly entered upon their minutes and signed by the proper officers, if intended as the completion of a contract, is a memoradum in writing, as required by the statute of frauds, and that as such it can be lawfully enforced. (Argus Company v. The Mayor, 55 New York, 405;

Johnson v. Trinity Church, 93 Mass., 11 Allen, 123; Himrod v. Railroad Company, 22 Ohio State, 457; Tufts v. Plymouth Company, 96 Mass., 14 Allen, 411; Chase v. Lowell, 73 Mass., 7 Gray, 35; Grimes v. Hamilton County, 37 Iowa, 294.) In the few cases which seemingly hold a contrary doctrine, the resolutions were deemed rather propositions for a contract than final acceptances of an agreement. (See Wade v. Newbern, 77 North Carolina 460; Dunham v. Boston, 94 Mass., 12 Allen, 376; Flint v. Pierce. 99 Mass., 69.) If a resolution duly entered and signed be a writing under the statutes of frauds, it must be a contract in writing within the meaning of the statute of limitations, where it shows upon its face that it is intended as the final acceptance of a previous agreement. This intention is most clearly expressed in the resolution under consideration. We therefore hold that the action was not barred by limitation.

It is also insisted that the court erred in giving judgment for the plaintiff in the court below, because the evidence showed that her intestate had sold the larger part of the bonds in his lifetime. No bonds ever issued, and hence Gentry could not have assigned the bonds themselves. It appears, however, from the evidence, that he did assign to different persons the right to each to receive a certain number of the securities. A partial assignment of a chose in action is good in equity, though the legal title remains with the assignor. (Harris County v. Campbell, 68 Texas, 22.) But it is well settled in this State that the holder of the legal title of a chose in action may bring suit upon it in his own name, although the equitable right may be in another. (Rider v. Duval, 28 Texas, 623; Wimbish v. Holt, 26 Texas, 674; Butler v. Robertson, 11 Texas, 142; Thompson v. Cartwright, 1 Texas, 87; Life Insurance Company v. Ray, 50 Texas, 511.)

The equitable owner is a proper but not a necessary party, unless the debtor have some legal defense as against him alone. But in this case the petition alleged the insolvency of the corporation, fraud and mismanagement on part of its officers, and prayed a receiver, and a receiver was appointed. This brought the administration of the entire assets of the corporation under the control of the court. Judgment was given for the plaintiff and the property ordered to be sold, but the proceeds of the claim sued on were decreed to be held until the parties claiming an interest in the lands could set up their title to them. The property having been sold, the court proceeded to adjust the

equities as between the claimants of the fund, and in its final order distributed it among them—the plaintiff receiving but about one-third of the amount. These distributees are not appealing, and the plaintiff in error can not complain. But it is further insisted that the resolution, as a contract to issue bonds secured by a mortgage, was void, because it was never authorized or ratified by a two-thirds vote of the stock of the corporation, as required by our statute. (Rev. Stats., art. 4220.) There is some conflict among the authorities upon the question of the validity of the contract of a corporation, when made in excess of its powers. When the contract is executed and the corporation has received the benefit the weight of authority seems to be that the corporation should be held estopped to deny its authority to make it. (Jones v. Guaranty Company, 101 United States, 622; National Bank v. Matthews, 98 United States, 621; Railway Company v. McCarthy, 96 Otto, 258; Whitney Arms Company v. Barlow, 63 New York, 62; Perkins v. Railroad Company, 47 Maine, 573; Ossippee, etc., Manufacturing Company v. Conney, 58 New Hampshire, 295; Rutland, etc., Railroad Company v. Proctor, 29 Vermont, 93; Monument National Bank v. Globe Works, 101 Massachusetts, 57; Attleborough National Bank v. Rogers, 125 Massachusetts, 339; Oil Creek Railroad Company v. Pennsylvania Transportation Company, 83 Pensylvania State, 160; Bank v. Hammond, 1 Richmond Law, 281; City Fire Insurance Company v. Canugi, 41 Georgia, 660; Southern Life Insurance Company v. Lanier, 5 Florida, 110; Littlewort v. Davis, 50 Massachusetts, 403; Underwood v. Newport Lyceum, 5 B. Monroe, 129; Hays v. Galion, etc., Gas Company, 29 Ohio, 330; State Board v. Citizens Street Railroad Company, 47 Indiana, 407; Durst v. Gale, 83 Illinois, 136; Thompson v. Lambert, 44 Iowa, 239; Foulke v. San Diego, etc., Railroad Company, 51 California, 356.) The rule is correctly stated in a recent work on Estoppel: "When a contract has in good faith been fully performed and nothing remains to be done by * * the party seeking relief, and all the shareholders have acquiesced in its performance, the plea of *ultra vires* or mere want of power is not available by the corporation in an action brought against it for not performing its portion of the contract. (2 Herman on Estoppel and Res Judicata, section 1179 and the numerous cases tnere cited.) There are some decisions which hold that a contract by a corporation *ultra vires* is wholly void and can not be enforced, either by or against it. But if the contract be within

the general scope of the corporate authority and the prohibition be merely against the mode of its execution it is valid as against the corporation which has received its benefits in favor of a party who has fully complied with the obligations on his part. In the case before us the railroad company had power to make a mortgage, but the statute provides it must be authorized by a vote in meeting of two-thirds in value of the stockholders. This provision is evidently for the protection of the latter. It seems from the evidence in this case that the defendant corporation was organized for the purpose of extending and operating the railroad acquired, or then about to be acquired by Gentry. It is fully shown that it made the purchase, promised the bonds and mortgage as a part of the consideration for the property and had operated the road for about three years when this suit was brought. It does not appear that it ever had any other assets save the property so acquired and a short extension of the line. Under these circumstances the corporation must be held estopped to deny the want of assent of its shareholders. The promise to make a mortgage under these circumstances is deemed in equity equivalent to a mortgage as between the original parties to the transaction. (Miller v. Moore, 3 Jones's Equity (N. C.) 431; Daggett v. Rankin, 31 California, 321.)

It is also complained that the court erred in decreeing the foreclosure of the mortgage upon that part of the road which was constructed after the defendant company's purchase from Gentry. The resolution above quoted, shows that the bonds were to be issued and the mortgage executed "in accordance with and fulfillment of the terms of agreement between him (Gentry) and H. H. Honore." By this agreement the bonds to be delivered to Gentry were to be secured upon the line of railway then "belonging to the Texas Western Narrow Gauge Railway Company, and upon such proposed extentions and branches thereof as the company owning and operating the same may elect to include in such mortgages." At a meeting of the stockholders held after the acceptance of the conveyance from Gentry, the stockholders, by a unanimous vote of all present, a majority in value of the stock being represented, authorized the issue of bonds of the precise character of those agreed to be delivered in the Honore contract, and directed that they should be secured by mortgages upon "all of the property, rights and franchises of the company from Houston to Presidio, both that actually constructed and acquired from A. M. Gentry,

\* \* and that to be constructed by the company." The contract evidently intended that bonds should be issued for a much larger amount than was necessary to discharge the obligation to Gentry, and that they should embrace some extension or some branch in addition to the road already constructed and in operation. An extension of the railroad either upon its main line or upon some one or more branches was evidently contemplated. There would have been a material difference in value between bonds to the amount of eighteen thousand dollars per mile upon the twenty miles of road already built, and similar bonds covering a longer line. If the company has projected more than one extension, it certainly had the right to choose upon which to give the mortgage. It could not elect to give it upon neither. Having made but the one extension, this must be held to be embraced in the mortgage, which it was Gentry's right to demand. Though the votes of the stockholders at this meeting in 1882, may be sufficient to authorize the execution of a mortgage, yet it shows the contemplated extension, and the property selected by the management for the security of such bonds as they proposed to issue.

The evidence showed that although Gentry agreed to convey the property to the Texas Western Narrow Guage Company, free from incumbrance, that portions of the right of way had not been paid for. A witness testified that it would probably cost ten thousand dollars to secure so much of this as had not been acquired, but as to the amount required for this purpose the evidence is conflicting—other witnesses placing it at a much less sum. It is assigned that the court erred in giving judgment for plaintiff for the full amount of her claim, and in not making a deduction for the unacquired right of way. It was proved, however, that when the conveyance was accepted, it was known to the directors that all the right of way had not been paid for and that there were other small claims Gentry had been unable to settle, but that it was agreed that the property should be accepted as it then stood, and that he was to be released from any further obligation to discharge these claims. It also appeared that, although the road at the time of the trial had been operated for over ten years, yet no one had ever brought suit for the land over which it was run, or for damages thereto. Having accepted the deed with the full knowledge of the facts, the grantee must await the establishment of claims existing at the time of the

conveyance against the property, before it can set up a breach of the warranty.

But if the defendant was entitled to a deduction from the amount of the judgment on account of unadjusted demands for the right of way, this would be no reason for reversing the judgment. All the property of the corporation has been sold to a third party and the proceeds are sufficient to pay but little more than half of the judgment. The result would have been the same if the recovery had been but for two-thirds of the amount.

The twentieth assignment of error is that "the judgment is contrary to the law and unsupported by the evidence, in that it finds for and allows plaintiff the full par value of the bonds claimed by her in said petition; whereas, there was no evidence of the value of said bonds, or that said bonds were of any value." The twenty-first assignment raises substantially the same question. The plaintiff did not sue for damages for not delivering the bonds but for her debt; and after setting forth all the facts in her petition she prays for judgment for "the interest and principal," and for a foreclosure of her equitable mortgage. If the bonds did not become due upon the payment of the interest, there was at the time she brought suit interest due amounting to many thousands of dollars, for which she was entitled to a foreclosure. The proper practice in such case was to decree a sale of the property and to apply the proceeds to both the matured and the unmatured debt, secured by the mortgage. The bonds, if issued, may have been below par in the market, but as against the defendant they were evidence of debt to their full amount.

Defendant in error objects to the consideration of the thirty-first assignment, upon the ground that it was not filed at the time of the filing of the writ of error bond, as required by the rules. There seems to be some misapprehension in regard to the practice in this matter. We therefore take occasion to say that the court does not refuse to consider assignments filed after the filing of the bond, unless it appears that it has operated to the prejudice of the opposing party. Motions to strike them out have been frequently refused by this court in oral opinions.

This assignment submits the propositions that the contract sued on is illegal because it shows upon its face that it is a contract for an issue of stocks and bonds to a fictitious amount, in contravention of the provisions of the statute. We are not

prepared to say from the evidence that the amount of stocks and bonds proposed to be issued to Gentry were fictitious. It may be suspected, but we do not think it proved. No issue of this kind was presented in the court below, and if it could properly be considered here we can not say that the testimony was sufficient to warrant a finding that the contract was illegal. But were it so, can the defendant be permitted to set up its illegality, after receiving the property under it, in order to defeat the payment of the consideration? What we have already said we think a sufficient answer to this question. (City of Natchez v. Mallory, 54 Miss., 499.)

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered February 7, 1888.