## LANGE SOAP CO. v. WARD. (No. 7299.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 18, 1925. Rehearing Denied March 4, 1925.)

**1. Corporations** &com;319(7)—**Evidence held to establish agreement by corporation to finance purchase of oil for its officers and to refine it for them.**

Evidence *held* to establish agreement by corporation to finance for plaintiff and another, officers of the corporation, the purchase of oil, and to refine it for them and allow them to have the profits.

**2. Corporations** &com;382 — **Statute prohibiting corporation to employ assets for purpose other than to accomplish object of creation held merely declaratory of common law.**

Rev. St. art. 1164, prohibiting corporation to employ its assets for purpose other than to accomplish objects of its creation, or those permitted by law, is merely declaratory of common law.

**3. Corporations** &com;388(2)—**Defense of ultra vires, in action on executed contract conferring benefits on corporation, precluded by estoppel.**

Defense of ultra vires, in action against corporation on executed contract conferring benefits on it, is precluded by estoppel.

**4. Corporations** &com;385—**Defense of ultra vires is not available to protect injustice and unconscionable appropriation of property to which corporation has no right.**

Defense of ultra vires is not available to corporation to protect injustice and unconscionable appropriation of property to which corporation has no right.

**5. Corporations** &com;487(1)—**Defense of ultra vires held not available to corporation in support of its appropriation of profits which under contract belonged to its officers.**

Where defendant soap company's contract with plaintiff and another officer, to finance for them a purchase of oil and to refine it for them for compensation, was not tainted by fraud and had a fair relation to matters within corporate authority, the corporation could not assert defense of ultra vires in support of its appropriation of the profits.

**6. Corporations** &com;427—**Lack of authority of president to bind corporation held not to authorize corporation to convert profits under contract.**

Lack of authority of president of corporation to bind latter in contract with officers, to finance purchase of oil on their account, *held* not to authorize corporation to convert profits thereunder belonging to officers.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by W. J. Ward against the Lange Soap Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Frank H. Booth, of San Antonio, for appellant.

Douglas & Carter and Van Haile McFarland, all of San Antonio, for appellee.

FLY, C. J. Appellee sued appellant to recover certain sums of money alleged to be due him as compensation for services, and $4,934.66, his undivided half of certain profits on 40,000 gallons of cotton seed oil, less 5 per cent. thereon. The cause was submitted to a jury on special issues, and on the verdict judgment was rendered in favor of

&com;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

appellee for $6,094.28, being $4,687.93 principal; the balance of the judgment being for interest at 6 per cent. per annum. The jury rejected the claim as to stock in the soap company, and the whole matter to be considered is in connection with the transaction as to buying oil, set up by appellee:

"During said period of time, and while plaintiff was manager of the oil department of defendant, and prior to about May 1, 1919, defendant had, largely, if not entirely, through the services of plaintiff, under contract about 40 tanks of oil, representing a liability of about $420,000. About this time, plaintiff learned of about 40,000 gallons of off-crude cotton seed oil, which could be purchased at 12 cents per pound, guaranteed to be equal to sample submitted. Plaintiff considered the price very low and urged upon B. J. Lange, defendant's president and general manager, the advisability of purchasing the same for defendant. Said B. J. Lange refused to permit the purchase to be made by plaintiff for defendant, upon the ground that defendant then had under contract all of the oil which its finances would permit it to handle. After such refusal, plaintiff conferred with Frank Lange, vice president and largest stockholder of defendant, and they agreed that they would make such purchase on their own account. Accordingly, plaintiff arranged a contract of purchase for said oil, the price having in the meantime advanced to 13½ cents per pound, under which the oil would be shipped 'open'; that is, not with bill of lading attached to a draft for the purchase money, one-half of the purchase price to be paid on delivery and one-half in 30 days thereafter. As a matter of convenience only, and with the knowledge and consent of said B. J. Lange, the contract was made in the name of defendant company, plaintiff having arranged to finance said purchase so that the company was entirely free from liability of loss. The market was advancing rapidly about that time, and plaintiff was of the opinion that it was not a good time to sell the company's oil, which opinion was shared by said B. J. Lange, whereupon, after plaintiff had first submitted an offer he had received to purchase oil to B. J. Lange as president of defendant so that he might avail of the opportunity to sell some of the company's oil, plaintiff sold the oil purchased by himself and Frank Lange for their joint account, realizing a profit on said sale of $9,869.33, of which he was entitled to one-half or $4,934.66.

"After the profits from such transaction were thus realized the said B. J. Lange undertook to repudiate his refusal to accept the oil for defendant's account, and is now claiming that defendant is entitled to said profits, and has failed and refused to pay plaintiff any part or portion thereof, and defendant has retained, and is still retaining, said sum of $9,869.33 and is treating the same as belonging to it. In this connection, plaintiff says that, even after the sale of said oil, he and said Frank Lange permitted the transaction to be handled in the name of the company, so that the company could avail of the use of about $30,000 represented by the profits from, and the deferred payment under, said contract, which money was sorely needed by the company at the time, and in this way the company obtained possession of said sum of $9,869.33, which it now refuses to pay over as aforesaid."

[1] The jury found in effect that the allegations were true and sustained by the evidence. There really is no tenable ground for the contention that the allegations are not sustained by the facts. The facts are that appellee purchased 40,000 gallons of "off-crude" oil from the Riverside Cotton Seed Oil Company of Fort Worth, Texas. He first submitted the proposition to B. J. Lange, president of the soap company, of purchase of the oil at 12 cents a pound for the company, but Lange refused to take it for the company, his reason being that the company had as much oil as he desired. He absolutely refused to purchase it for the company. Frank Lange, vice president of the company, and appellee agreed to buy the oil on their own account and have it refined by appellant and assume all risk consequent to the purchase of the oil. They bought the 40,000 gallons of oil, and in a few days sold it at a profit of $9,869.33. After the oil was sold and the profit made, B. J. Lange claimed the profit on the oil was the property of appellant, and it was claimed that the company "could not permit any employé or officer of the company to trade around like that and take profits." Appellee got nothing, and the company appropriated the profits on the sale of the oil bought by appellee and Frank Lange, at their own risk, after a number of refusals of the company's president to buy it. Under an agreement with the president, the company allowed its name to be used in the purchase of the oil and advanced the 50 per cent. cash payment that was made on delivery of the oil. The company refined the oil. Appellee paid out no money on the purchase, but all of it was paid by the company. B. J. Lange swore that the oil was bought for the company and not for appellee and Frank Lange. Appellee, however, was corroborated by W. E. Easton. He testified that he was present when the agreement was made by B. J. Lange. He stated that B. J. Lange said that the soap company could not, and would not, handle the purchase of the oil in question, and, when appellee told him that he would buy the oil on his own account if the company would refine it for him on the usual terms, Frank Lange then stated that he would finance it for appellee on a fifty-fifty basis, to which he agreed. The oil was bought by appellee, shipped to San Antonio, and refined by the company. The witness stated:

"Mr. B. J. Lange stated that it would be a losing proposition, but if Mr. Frank Lange and Mr. W. J. Ward felt disposed to take it into the Lange Soap Company plant and refine it at the usual price for such work, they could do so at their own risk. It is a fact that the crude oil was shipped to San Antonio and refined by the Lange Soap Company."

No claim was made to the oil by appellant until a handsome profit was realized, and then it was discovered that the transaction was ultra vires and the company would take the profits. The defense to the claim of appellee is that the contract, made by appellant with appellee and his associate, was one beyond the scope of the power granted by the act of its incorporation, or outside the objects for which it was created as defined by its charter. To put the proposition in concrete form, it is contended that appellant had no authority to contract with appellee to finance a purchase of oil for him and refine it and allow him to have the profits.

[2] It is not claimed that appellant was not protected from any loss that might occur in financing the purchase of the oil and in handling it, but merely that the contract was ultra vires and, therefore, appellant had the right to appropriate the profits arising from the transaction. The proposition is based largely on the provisions of article 1164, Rev. Stats., as follows:

"No corporation, domestic or foreign, doing business in this state, shall employ or use its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation or those permitted by law."

The statute lays down no new principle and declares no new doctrine, but is merely declaratory of the common law, which confines corporations in their operations to the purposes for which they are created. Railway v. Gentry, 69 Tex. 625, 8 S. W. 98; Ingram v. University (Tex. Civ. App.) 196 S. W. 608.

[3] It is the rule, however, that a corporation will be estopped from setting up and defeating an action on the ground of the contract on which it is based being ultra vires, when the contract has been executed and benefits received thereunder. Weathersby v. Lumber Co., 107 Tex. 474, 180 S. W. 735, 7 A. L. R. 1440. In the case of San Antonio Hardware Co. v. Sanger, 151 S. W. 1104, this court said:

"It has been often held, and may be considered settled, that when an ultra vires contract with a corporation has been fully executed the courts will not interfere with the rights acquired under that contract. * * * Where the ultra vires contract is wholly executory on both sides, neither party is estopped to deny the validity of the contract. * * * There is a conflict of opinion as to whether the full performance of an ultra vires contract by one of the parties to it would authorize an action to require performance on the part of the other."

A number of authorities sustain the decision and a writ of error was denied by the Supreme Court.

The case of Bond v. Terrell Mfg. Co., 82 Tex. 309, 18 S. W. 691, is cited in the Hardware Co.-Sanger Case, wherein it is held:

"It seems now to be settled by the great weight of authority, that where there is a question of a contract between a corporation and another party, and the contract has been performed by the other party, and the corporation has received the benefit of the contract, it will not be permitted to plead that on entering into the contract it exceeded its charter powers."

[4, 5] In this case appellee had fully complied with his part of the contract, and appellant had obtained the benefit of payment of the amount due for its work in refining the oil, and it will not be permitted to appropriate the profits due to appellee on the ground that it had no authority to make the contract. Permitting such appropriation would be inequitable and unjust in the extreme.

The contract in this case may be ultra vires, but it is not tainted by fraud, nor is it clearly prohibited by statute, for undoubtedly the refining of the oil was along the lines for which the corporation was created, and the money that was advanced was for the oil that it refined, and it would be gross injustice to permit the corporation to appropriate the money of another because it had obtained possession of the money by violating the law of its creation. The whole transaction had some fair relation to the matters within corporate authority, and although it may be held that appellee was charged with notice of the limited powers of the corporation, the defense of ultra vires will not be available to protect injustice and unconscionable conduct in the appropriation of property to which it has no lawful right. Elliott on Contracts, vol. 1, § 558, and authorities cited in footnotes. We are not called upon to entertain the hypothetical case suggested that appellant might have lost by the transaction. It did not lose, but profited by the transaction.

[6] Even if B. J. Lange had no authority to bind appellant in the contract, that fact gave no authority to appellant to convert the property of another to its own use. It had no right or title to the profits realized from the transaction, and courts will not sanction such injustice as that attempted by the corporation.

The judgment is affirmed.