**BURTON v. ROOS et al.** *

**ROOS v. TEXAS CO.**

**No. 226.**

District Court, W. D. Texas, San Antonio Division.

June 9, 1937.

Gus. B. Mauermann, of San Antonio, Tex., and Herold, Cousin & Herold, of Shreveport, La., for Edward Roos.

S. J. Brooks, of San Antonio, Tex., and Jno. C. Jackson, Brady Cole, and C. R. Wharton, all of Houston, Tex., for Texas Co.

KENNERLY, District Judge.

The history of this litigation will be found in Conn v. Roos (C.C.A.) 14 F.(2d) 64; Roos v. Texas Company (C.C.A.) 23 F.(2d) 171; Id., 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001; Texas Company of Mexico, S. A., v. Roos (C.C.A.) 43 F.(2d) 1; Roos v. Texas Co. of Mexico, S. A., 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 794, and Roos v. Texas Company (C.C.A.) 68 F. (2d) 321. This case, as reflected by the pleadings as they were at that time, is clearly stated in the opinion of Judge Bryan in 68 F.(2d) 321. Since then, Edward Roos (for brevity called plaintiff) has filed (July 5, 1934) his amended ancillary bill of 95 typewritten pages, which, when stripped of much unnecessary verbiage, is, in the main, substantially similar to the pleadings considered by Judge Bryan. Briefly stated, they are that plaintiff

*Decree affirmed — F.(2d) ——.

on March 27, 1927, in No. 226, E. O. Burton v. Edward Roos et al., recovered a judgment against the Texas Company of Mexico, S. A., a Mexican corporation (for brevity called Mexican corporation), for $1,500,672.70, with interest, and is here now seeking, in this ancillary proceeding, to hold liable, and have a decree therefor against, the Texas Company of Delaware (for brevity called Delaware corporation), upon the claim that the Delaware corporation upon its incorporation assumed all the liability and obligations of the Texas Company, a corporation organized under the laws of Texas (for brevity called Texas corporation), and that the Mexican corporation is insolvent, and that the Texas corporation and the Delaware corporation were and are liable for and obligated to pay plaintiff's judgment against the Mexican corporation, for the following alleged reasons:

(a) That the Texas corporation, acting under the laws of Texas, organized and subscribed for all the capital stock of the Mexican corporation, and that it is liable as principal for the acts of the Mexican corporation, its mere agent, department, or instrumentality.

(b) That the Texas corporation owes the Mexican corporation a large unpaid balance on its subscription to its capital stock which is a trust fund for creditors, including plaintiff.

(c) That the Texas corporation appropriated a large reserve fund belonging to the Mexican corporation which the Mexican corporation had set aside as required by its charter and the laws of Mexico.

(d) That the Texas corporation, as sole stockholder, unlawfully caused the Mexican corporation to declare and pay it large dividends and/or that it offset such dividends against moneys which the Texas corporation owed the Mexican corporation for oil, etc.

(e) That the Texas corporation, by reason of its position as sole stockholder of the Mexican corporation, purchased oil from the Mexican corporation at less than market price.

(f) That the Texas corporation is liable to plaintiff under the laws of Mexico by allowing and causing its name to be used in the corporate name of the Mexican corporation.

Before answer to the merits, various motions were filed by defendant, which were overruled or were taken with the case and are now overruled, under the rule announced in Dixon v. Hopkins (C.C.A.) 56 F.(2d) 783, 784, and cases there cited.

Defendant in its answer joined issue with plaintiff on the allegations of his bill, and pleaded res adjudicata, estoppel, laches, limitation, etc.

The following is the part of a stipulation filed which is pertinent to the trial of the case:

"(a) The entire record in the cause entitled E. O. Burton v. Edward Roos, No. 226 in Equity United States District Court, Western District of Texas, San Antonio Division, (including all evidence therein, oral and documentary) may be considered as in evidence on the trial of this suit with the agreement that the court need consider in arriving at his decision only such portions of such record as may be relevant and pointed out to him by counsel.

"(b) The case to be tried under the submission of that record as well as upon such additional legally competent testimony as the parties may offer on the issues involved."

Then follows the agreement as to filing briefs, etc., and it is then said:

"In these briefs, either in the original or by supplemental brief or by way of appendix, or otherwise, the parties are to point out specifically the portions of the record upon which they rely in support of their respective contentions."

In the trial of the case, I have regarded as controlling the opinion of Judge Bryan in 68 F.(2d) 321, and particularly this language with respect to plaintiff's then pleadings:

"Notwithstanding these objections of appellee, which were successfully maintained in the District Court on its motion to dismiss the ancillary bill, we are of opinion that Roos states such a case as entitles him to the relief for which he prays in this proceeding, and that, if he is able to prove what he alleges, he has the right to a judgment over against appellee for the full amount of the judgment with interest which he recovered against the Mexican company."

1. Prior to the passage by the Texas Legislature of the Act of February 20, 1917 (Acts Tex.1917, c. 31), a Texas corporation, except as permitted by the Act of April 7, 1915 (Acts Tex.1915, c. 152), was

not permitted to own stock in another corporation, either domestic or foreign. Sabine Tram Co. v. Bancroft, 16 Tex.Civ. App. 170, 40 S.W. 837; Rue v. Missouri Pacific Rep. Co., 74 Tex. 474, 479, 8 S.W. 533, 15 Am.St.Rep. 852; Mud Creek Irrigation Co. v. Vivian, 74 Tex. 170, 173, 11 S. W. 1078; Fort Worth Ry. Co. v. Rosedale Ry. Co., 68 Tex. 169, 177, 4 S.W. 534; Lyons-Thomas Hardware Co. v. Perry Stove Co., 86 Tex. 143, 24 S.W. 16, 23, 22 L.R. A. 802; Ruling Case Law, Vol. 7, §§ 535, 536, and 537; People of the State of Illinois v. Chicago Gas Trust Co., 130 Ill. 268, 22 N.E. 798, 8 L.R.A. 499, 17 Am.St.Rep. 319; Dillard & Coffin Co. v. Richmond Oil Co., 140 Tenn. 290, 204 S.W. 758; De La Vergne Refrigerating Co. v. German Savings Institution, 175 U.S. 40, 53, 20 S.Ct. 20, 44 L.Ed. 65; Anglo-American Land Co. v. Lombard (C.C.A.) 132 F. 721, 736; Cumberland Telephone & Telegraph Co. v. City of Evansville (C.C.) 127 F. 187, 189; First National Bank v. Converse, 200 U.S. 425, 26 S.Ct. 306, 50 L.Ed. 537; Lange Soap Co. v. Ward (Tex.Civ.App.) 269 S.W. 851; Texas W. Railway Co. v. Gentry, 69 Tex. 625, 8 S.W. 98; Ingram v. Texas University (Tex.Civ.App.) 196 S.W. 608.

The Act of February 20, 1917 (section 1), contains this language (italics mine):

*"In lieu of engaging directly in the oil and gas producing business in any State or country a corporation organized under this chapter and authorized to engage in said producing business may own the stock of other corporations engaged therein,* provided that it shall not own the stock of more than one producing corporation, or one pipe line corporation, organized under the laws of this or any other single State. Nor shall any corporation organized in any other State or country be permitted to own or operate oil pipe lines or engage in the oil producing business in this State when the stock of such corporation is owned in whole or in part by a corporation organized under this chapter."

After the passage of this act, and on June 26, 1917, the Texas corporation amended its charter. Such amendment contains the following language (italics mine):

*"In lieu of engaging directly in the oil and gas producing business in any state or country this company may own the stock of other corporations engaged in said business,* but it shall not own the stock of more than one such corporation organ-

ized under the laws of this or any other single state."

On March 3, 1917, the Texas corporation caused three of its employees in Mexico to execute before a notary public, a "constitution" or charter for the Mexican corporation, and Mexican corporation then or thereafter took over substantially all, if not all, of the properties formerly owned by the Texas corporation in Mexico, but held by and in the name of other persons, including the oil lease covering oil lands in which plaintiff owned an undivided three-eighths interest, which lease formed the basis of plaintiff's judgment against the Mexican corporation. The entire then capital stock of $1,000,000 (American money) of the Mexican corporation was subscribed, nominally by the three employees, but in truth and fact by the Texas corporation. Of this original capital stock, only one-tenth, or $100,000, was then paid by the Texas corporation, and the Texas corporation has never at any time paid the balance of $900,000. Later in 1917, the capital stock of the Mexican corporation was increased in the sum of $1,650,000 (American money), which increase was all subscribed by Texas corporation and paid for by Texas corporation causing to be transferred to the Mexican corporation the Mexican properties mentioned. All of the shares of stock of the Mexican corporation were issued to and were thereafter until about 1927 owned by the Texas corporation.

In 1927 the Texas corporation transferred all the stock of the Mexican corporation to the Delaware corporation, and the Delaware corporation assumed the payment of the balance of $900,000 owing by the Texas corporation thereon, and in 1929, at a time when the Mexican corporation was insolvent, the Delaware corporation drew a draft for $900,000 (plus some other items, totaling $934,000) on the Texas corporation, in favor of the Mexican corporation, to cover the hereinbefore mentioned balance on the stock, and forwarded it to the Mexican corporation, and the Mexican corporation so credited it. Mexican corporation, however, forthwith sent the draft on to the Texas corporation to be credited on an indebtedness of the Mexican corporation to the Texas corporation, and it was so credited. Texas corporation then charged the draft against the Delaware corporation. By this method of payment by the Delaware corpora-

tion (if payment it was) of such balance of $900,000, it was not available then nor thereafter to pay plaintff's judgment, nor was it an asset which plaintiff could reach by execution or otherwise.

The sole purpose of the organization of the Mexican corporation was to enable the Texas corporation to produce oil and do an oil business, etc., in Mexico, and the Texas corporation throughout treated the Mexican corporation as a branch, department, agency, or instrumentality for carrying on its business in Mexico, and not as an independent corporation. The personnel of its officers and employees, its policies, its financing, its accounting and auditing, and its legal matters were all set up, dictated, controlled, ordered, and directed by the Texas corporation, in the same manner as if it had been a department·of the Texas corporation. Oil produced by the Mexican corporation was delivered by it to the Texas corporation at prices fixed by the Texas corporation.

The Texas corporation being in December, 1921, indebted to Mexican corporation in a large sum (more than $3,000,000) for oil, unpaid stock subscription, etc., and the end of the year being near at hand, directed and caused the Mexican corporation to declare and pay to the Texas corporation a dividend of $8,750,000, and in December, 1922, under similar circumstances, directed and caused it to declare and pay to the Texas corporation a dividend of $1,060,-000. The manner in which these dividends were. caused to be paid is well illustrated by a telegram, bearing date December 14, 1921, from the general counsel of the Texas corporation (but who was not an officer of the Mexican corporation) to the attorney for the Mexican corporation, reading as follows:

"Please convene special directors meeting December fifteenth and adjourn until December twenty-second at which time adopt resolution declaring dividend equal to surplus of November thirtieth provided such surplus does not exceed nine million dollars American currency this being the maximum amount of dividend."

In declaring and paying such dividends, the directors of the Mexican corporation exercised no free or independent judgment or discretion, but moved wholly and entirely under, and because of, the direction of the Texas corporation.

At the time such dividends were declared and paid, plaintiff's suit against the Mexican corporation was pending in this court, having been tried in October, 1921. After the trial, it went to a master to ascertain certain facts, and judgment was rendered as stated on March 27, 1927.

Such dividends were not declared and paid specifically for the purpose of defrauding plaintiff or defeating the payment of his claim or the judgment afterwards rendered thereon, but with full knowledge of his claim, then, as stated, being prosecuted in this court. It is not entirely clear (but probable) that Mexican corporation was rendered immediately insolvent by the declaration and payment of such dividends, but it is clear that the payment of such dividends so crippled it that it became insolvent. Any reasonably prudent person would have known, and both the Mexican corporation and the Texas corporation did know, that the payment of such dividends would so cripple it that it would become insolvent. The payment of such dividends prevented plaintiff from collecting from Mexican corporation his judgment. But' for the declaration and payment of such dividends, the Mexican corporation would have been able to pay off plaintiff's judgment when rendered and when it became final, or plaintiff would have been able to enforce collection thereof against the Mexican corporation.

At the time the 1922 dividend was paid, the legal reserve of the Mexican corporation under the laws of Mexico was shown by the Mexican corporation's books to be approximately one-half million dollars. It was not wholly wiped out, but was very seriously impaired by the declaration and payment of 1921 and 1922 dividends. What remained after the dividend payments was lost in and by reason of the operation of the Mexican corporation prior to the date of plaintiff's judgment against the company.

 That generally speaking, an ordinary stockholder in a corporation is not liable for the debts of the corporation beyond the amount of his unpaid stock subscription seems settled in this country and in Mexico. I am cited to no case and know of none which makes a parent Texas corporation (such as was Texas corporation) liable for the indebtedness of a subsidiary corporation (such as was Mexican corporation) where the parent corporation owns the stock of the subsidiary under the Act of the Texas Legislature of February 20, 1917. That ordinarily a stock-

holder is not liable for the debts of his company because of a dividend declared and paid to him, nor required to pay back a dividend paid to him where the dividend is providently and in good faith declared and paid, is clear.

But that is not the case we have here. Here the facts show that while in so far as their charter set-up was concerned, the Texas corporation and Mexican corporation were separate entities. Texas Co. of Mexico v. Roos (C.C.A.) 43 F.(2d) 1, 15. The Mexican corporation was in truth and fact but a branch, department, agency, or instrumentality of the Texas corporation and wholly controlled and dominated by it. At the time the dividends were declared and paid, the Texas corporation had gotten back from the Mexican corporation its original investment therein, plus a large profit, and was indebted to it in a sum in excess of $3,000,000, and to allow it in addition to hold the dividends aggregating more than nine million dollars ($9,810,000) and leave plaintiff's judgment unpaid would be grossly inequitable. This is particularly true when it is considered that the payment of the dividends resulted in the insolvency of Mexican corporation and in plaintiff being unable to collect his judgment from it.

Under these circumstances, equity will ignore the corporate entity, go to the heart of the matter, and do justice. Chicago, etc., Ry. Co. v. Minneapolis Civic Ass'n, 247 U.S. 490, 501, 38 S.Ct. 553, 62 L.Ed. 1229; United States v. Reading Co., 253 U. S. 26, 62, 40 S.Ct. 425, 434, 64 L.Ed. 760, reaffirmed in United States v. Elgin, etc., Ry. Co. (May 25, 1936) 298 U.S. 492, 56 S. Ct. 841, 80 L.Ed. 1300; Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Centmont Corporation v. Marsch (C.C.A.) 68 F.(2d) 460; Woodbury v. Pickering Lumber Co. (D.C.) 10 F. Supp. 761, 766, same case on appeal Commerce Trust Co. v. Woodbury (C.C.A.) 77 F.(2d) 478, 487; Page v. Arkansas Natural Gas Corporation (C.C.A.) 53 F.(2d) 27, 38; Trustees System of Pennsylvania v. Payne (C.C.A.) 65 F.(2d) 103, 107; Majestic Co. v. Orpheum Circuit (C.C.A.) 21 F.(2d) 720, 724; In re Kentucky Wagon Co. (D.C.) 3 F.Supp. 958, 962.

2. But defendant contends that all these matters were adjudicated in the main case (Burton v. Roos) in which plaintiff recovered his judgment against the Mexican corporation. I think this contention is disposed of by this language in Judge Bryan's opinion (italics mine):

"As to the law of the case: The Texas company was not a party defendant in the main suit. As will appear from our former decisions, Roos was unsuccessful in his effort to bring that company into the main suit and obtain a judgment against it. It is true that he there alleged and offered evidence to prove some of the things he now alleges and offers to prove. Aside from any question of the right of one who is not a party to litigation to claim a benefit from it, although he is usually quick to deny any liability under it, there is a great and vital difference between the relief sought on the one hand in the main suit and on the other in the ancillary bill in this suit, in this, that in the former Roos did not allege or prove that the Mexican company was insolvent, though the Mexican company alleged that it was financially able to pay any amount which was shown to be owing by it to Roos on an accounting between them; whereas in the latter it is distinctly and positively alleged as the basis of recovery that the Mexican company is insolvent. The purpose Roos had in the main suit in complaining of the Texas company's failure to pay the balance on the stock subscription, of its appropriation of the reserve fund, and of its having the Mexican company to declare an unwarranted dividend, was to prove that the Mexican company was but the mere instrumentality of the Texas company; and that the latter was therefore responsible to him wholly apart from the question of the solvency or insolvency of the former. All that was decided on this subject in the main suit was that the Texas company was not liable as a contracting party for a breach of the Mexican company's contract in the development of the oil lease, or in the sale of oil produced from the well in which Roos was interested. *The question whether the Texas company was or would be liable for any judgment which Roos might obtain against the Mexican company was not, nor could it under the pleadings have been, a question at issue. In the main suit the Texas company was sought to be held liable for what its subsidiary, the Mexican company, had done. In this ancillary bill liability is asserted for what the Texas company itself has done. There has been no ruling asked for or made in all this long litigation to the effect that the Texas company would not be*

*liable to Roos for the value of assets of the Mexican company which it has in its possession upon a showing that the Mexican company was insolvent and therefore unable to pay Roos the amount of his claim."*

 3. Defendant raises questions as to the court's jurisdiction of this, an ancillary bill brought by plaintiff to collect his judgment obtained in the main cause. I think the contention is not meritorious. Likewise I find no merit in defendant's contention that this suit, brought within a brief period after plaintiff's judgment against the Mexican corporation became final on appeal, is barred because of laches or stale demand.

From what has been said, it follows that plaintiff is entitled to judgment as prayed for in plaintiff's amended bill filed July 5, 1934. Let a decree be drawn and presented accordingly. Findings of fact and conclusions of law will be filed if seasonably requested by either party.