DOUGLASS et al. v. MYRICK et al.

(Court of Civil Appeals of Texas. Galveston. May 29, 1913. Rehearing Denied June 26, 1913.)

1. COUNTIES (§ 117*)—COUNTY "CONTRACT"—NECESSITY OF BIDDING.

Where the court of county commissioners purchased shell to be used in improving a highway, the purchase is not a contract which must be let to the lowest bidder in accordance with Rev. St. 1911, art. 640, providing that when work is done by contract in any county it shall be invited by advertisement.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 188; Dec. Dig. § 117.*

For other definitions, see Words and Phrases, vol. 2, pp. 1513–1534; vol. 8, pp. 7615–7616.]

2. COUNTIES (§ 122*)—CONTRACTS—INVALIDITY.

That the court of county commissioners sold the bonds of a road district at a discount by means of a sham contract will not invalidate the contract of a third person with the county commissioners for the sale of road materials, even though Rev. St. 1911, arts. 627–655, is evaded by the sale of such bonds at a discount.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 82, 136, 181, 182; Dec. Dig. § 122.*]

3. EVIDENCE (§ 399*)—PAROL EVIDENCE TO VARY WRITTEN INSTRUMENT.

In view of Rev. St. 1911, art. 2276, providing for the keeping of the minutes of the court of county commissioners, a contract between the county commissioners' court and a third person embraced in a written proposal and acceptance cannot be varied by parol.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1772–1777; Dec. Dig. § 399.*]

4. COUNTIES (§ 122*)—CONTRACTS—LEGALITY.

Taxpayers of a road district cannot secure an injunction to prevent the performance of a contract for the purchase of shell to be used on the road merely upon a showing that the person who had sold the county bonds and who had agreed to assist the county commissioners in repairing the road, but whose services had been dispensed with after the hiring of an engineer, had an interest in the contract and received part of the purchase price as commission; it appearing that the contractor did not know of his relations with the county and that the county court commissioners knew that he was getting a commission out of the shell contract.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 82, 136, 181, 182; Dec. Dig. § 122.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Action by W. L. Douglass and J. H. Marshall against W. A. Myrick and others, composing the county commissioners' court, continued after the death of Douglass by the remaining plaintiff and C. F. Steusoff. From a judgment for defendants, plaintiffs appeal. Affirmed.

Crook, Lord, Lawhon & Ney, of Beaumont, for appellants. Watts & Wheat, of Beaumont, for appellee Myrick. D. D. McDonald, of Galveston, for appellee Haden. E. B. Pickett, Jr., of Liberty, for appellees Abshier, Simmons, Moore, and Berry.

REESE, J. W. L. Douglass and J. H. Marshall instituted this action in the district court of Liberty county against the county judge and county commissioners, composing the commissioners' court of said county, the county treasurer of said county, and W. A. Myrick and W. D. Haden to enjoin the carrying out of a certain contract entered into by said commissioners' court with W. D. Haden for furnishing shell for certain public roads in road districts 1 and 4, and to enjoin the county treasurer from paying any money earned or claimed under said contract. The plaintiffs sue as resident citizens and taxpayers of said road precincts for themselves and for the benefit of other persons similarly situated and affected. Pending the suit W. L. Douglass died and C. F. Steusoff, with leave of the court, made himself a party plaintiff with Marshall, alleging that he was a resident taxpayer of said road precincts. An amended petition was filed by Marshall and Steusoff, on which the case went to trial. The case was tried without a jury, and judgment for defendants, from which plaintiffs appeal.

It was alleged in the petition that an election had been duly had under provisions of the statute authorizing the issuance of bonds and providing for a tax to pay the same for the purpose of grading, improving, and making hard surface roads in said precincts. The bonds provided for were for road precinct 1, $125,000, and for road precinct 4, $100,000, and were to bear interest at the rate of 5 per cent. It was alleged that W. A. Myrick had submitted a proposition to purchase the entire issue for road precinct 1 of $125,000 at par, and had accompanied his bid with the following proposition: "Beaumont, Tex-

as, March 30th, 1912. To the Hon. County Judge and Commissioners' Court of Liberty County, Texas—Gentlemen: Referring to my bid of Feb. 28th, 1912, for the purchase of $125,000 of bonds for road district No. 1, Liberty county, Texas, I beg to submit the following proposition: I will advise and assist you in the preparation of plans and specifications for road work to be done in road district No. 1, Liberty county, Texas, and I will advise and assist you in calling for bids from contractors to do said work, and I will advise and assist you in the consideration of said bids, and in awarding contract or contracts to such contractor or contractors whose bid or bids may be accepted. It is to be understood that my services are to be advisory only on all things pertaining to said road work, up to and including the awarding of the contract or contracts, and in rendering such services it is to be understood that it shall be so managed as not to require me to take more than one trip each month during 1912, to Liberty, Texas. I will further furnish the blank bonds ready for execution. In consideration of said services you are to allow and pay me the sum of seven thousand and five hundred dollars, the same to be paid in amounts proportionate with each installment of bonds as they are delivered to the purchaser in New York Exchange, or acceptable exchange, same to accompany the bonds when they are forwarded for delivery. Said exchange to be payable to the order of such person or firms as I may hereafter designate."

Said proposition was accepted by the commissioners' court, by order duly made and entered upon their minutes, on or about April 1, 1912, as follows: "Whereas W. A. Myrick, of Beaumont, Texas, has made a proposition in writing of date March the 30th, 1912, to do and perform certain services for road district No. 1, Liberty county, Texas, as in said written proposition fully set out and specified; and whereas this court deems it to be to the interest of said road district No. 1 to accept said proposition: It is therefore ordered by the commissioners' court of Liberty county, Texas, that the said proposition be and the same is hereby accepted, and that said W. A. Myrick be and he is hereby employed to perform said services, and to be paid therefor according to the terms of his said proposition."

A former proposition slightly different had been made by Myrick on February 28th and accepted by the commissioners' court by order entered on the same day, which action was rescinded by mutual agreement, and the last proposition made and accepted as set out. It was alleged that the bonds had in fact been sold to Myrick at a discount of 6 per cent., amounting to $7,500, which discount had been paid to and received by Myrick in consideration of the services to be rendered by him under said contract, and

that he became thereby the confidential agent and adviser of the county in all matters pertaining to the preparation of plans and specifications on road work for said precinct 1, and bids to do said work, and awarding contracts, etc. It was further averred that afterwards the $100,000 bonds for precinct 4 were sold to the Grigsby Construction Company, which was given the contract for doing the grading and engineering work on the roads in said precinct. It was averred that, at a subsequent term of the commissioners' court, on October 2, 1912, W. D. Haden was awarded the contract to furnish Sabine Pass shell for road districts 1 and 4 at 64½ cents per cubic yard, and 60,000 cubic yards ordered as a part fulfillment of said contract. The real gravamen of the complaint of plaintiffs is set out in substance and briefly as follows: That, notwithstanding that by the terms of the contract referred to Myrick was the confidential agent and adviser of the commissioners' court in this matter, he was mainly instrumental in procuring the assent of the court to this contract, and that, by agreement with Haden, Myrick was and is to receive 9½ cents per cubic yard for all shell furnished by Haden to the county under the contract. It is charged that two members of the commissioners' court (naming them) and the said county judge were cognizant of the fact that Myrick was interested in said contract, although they probably did not know the full extent of such interest; and it is further charged that Haden knew at the time he made the contract that Myrick was the agent of the county commissioners in the matter referred to. These facts are set out in the petition at length; and it was further averred that, before the contract was procured from the county by Myrick for Haden, Haden had priced said shell to Myrick for Liberty county at 55 cents per cubic yard, and that Myrick refused to recognize said bid until he secured the contract above mentioned whereby he was to receive 9½ cents per cubic yard, and a contract was made with the county whereby Haden was to receive 64½ cents. It was further alleged that under the provisions of law the commissioners' court should have advertised for bids for furnishing said shell in a newspaper published in Liberty county, of which there were then three in number, and should have let said contract to the lowest bidder, after such public advertisement, which was not done. The petition charges that, at the time the contract was made with Haden, the commissioners' court and the members thereof knew that such shell as was to be furnished by Haden could be procured for a less price, and that Haden would furnish it for a less price, and that Myrick was to receive the difference between the price agreed on in the contract and the amount for which it could be obtained, but notwithstanding this knowledge they proceeded to

make the contract. For the reasons stated it is charged that the contract is void in its entirety, and plaintiffs pray that the same be canceled and that defendants be enjoined from carrying out the same, and the county officers from paying out any money on the same, and that, if not entitled to such relief, at least the contract whereby Myrick is to receive 9½ cents per cubic yard for said shell be declared void, and the county officers be enjoined from paying this much of the price of said shell either to Haden or Myrick. The petition was properly sworn to by both plaintiffs.

The county judge and commissioners and the county treasurer, after general demurrer and special exceptions, which were overruled, made general denial of the allegations of the petition. W. A. Myrick pleaded general demurrer and special exceptions, which were overruled, and which need not be set out, and also pleaded the general issue. For special answer he admitted the agreement between himself and the county set out in the petition, but avers that by such contract it was intended and understood that he was to advise and assist in preparing the plans for the grading of the roads in said precinct 1 and to advise and assist in considering bids to do said grading work; that he fully complied with his part of said contract and did everything that was required of him thereby; that about May 1, 1912, the commissioners' court paid him the money stipulated in said contract, and thereupon all relations between the commissioners' court and himself under said contract ceased and the court considered and held that he had fully discharged his part of said contract. It was alleged that subsequently thereto, and prior to October 2, 1912, the said commissioners' court called for bids for furnishing shell with which to surface said roads, and the owner of an outfit in Beaumont offered to furnish such shell for 65 cents per cubic yard; that he (Myrick) bid 64½ cents, and Haden bid 50 cents for furnishing Galveston shell; that, owing to the inferior quality of Galveston shell and the greater freight rate, the court rejected Haden's bid and awarded the contract to him (Myrick), and that thereupon he made a contract with Haden to furnish the Sabine Pass shell at 64½ cents, and that the arrangement between himself and Haden is a private matter which does not concern plaintiffs.

Haden answered with general demurrer and special exception, which were overruled, and specially denied any knowledge that Myrick was the agent of the commissioners' court when he made the contract referred to. He denied the charge of graft in the matter of his contract with Myrick. Further denial was made of the charge in the petition that he had priced and valued to Myrick for Liberty county Sabine shell at 55 cents per cubic yard, and that, as charged, Myrick refused to recognize such bid until he could secure the contract with Haden whereby he was to receive 9½ cents per cubic yard of the price, and a contract made between the county and Haden for 64½ cents. Special denial is also made of the charge that the county commissioners suppressed competition and so handled the matter that only he had opportunity to bid on the contract, for the purpose of allowing Myrick to obtain his profit, but avers, on the contrary, that the court, and especially the commissioners from said two road precincts, made a most thorough and painstaking investigation of the whole question of obtaining shell for said roads, and procured three bids from Galveston and two from Jefferson county for Sabine shell, and he himself submitted separate bids for Galveston and Sabine shell. Denying that he had any knowledge that Myrick had any connection with the commissioners' court, Haden alleged that he, being assured by Myrick of the quantity and quality of Sabine shell and the expense of procuring and delivering the same, consented that Myrick as his agent might submit, in his (Haden's) name, a bid for the delivery of Sabine Pass shell for the best price he could obtain not less than 55 cents per cubic yard; that Myrick procured the contract for him at 64½ cents, and he has at great expense to himself, to wit, about $20,000 or $30,000, prepared to carry out said contract and is now engaged in carrying out the same in good faith. It is averred that the price of 64½ cents is less than the shell could have been procured for, or can now be procured for, from any other source. It is further alleged that, since authorizing Myrick to make the contract at 55 cents, he had contracted to pay Myrick 9½ cents per cubic yard for shell delivered by him out of payments made to him by the county, that being the difference between his minimum price with Myrick and the price under the contract with the county; that said contract was made openly and was one which he had a good and perfect right to make. Finally defendant Haden pleads that, if Myrick was in fact an agent or employé of the county and incapacitated from doing what was done by him, he had no knowledge thereof and the said facts, if true, would not invalidate his contract with the county.

There are no conclusions of fact or law in the record, so as the case comes to us we will have to consider every material issuable fact decided in favor of appellees by the trial court sitting as a jury. All of the allegations of the petition as to the election and the issuance and sale of the bonds were established without dispute, as well as the making of the contract by the commissioners' court with Myrick, as set out, and the execution of the contract for delivery of the Sabine Pass shell with Haden, at the price named, and the contract between Haden and Myrick by which the latter was to be paid by

Haden 9½ cents per cubic yard for all shell delivered by him under the contract. This contract was for shell for the roads in both precincts 1 and 4, while the contract between Myrick and the commissioners' court only related to the roads in precinct 1, for which the $125,000 bond issue was made. The real facts with regard to this contract with Myrick and the commissioners' court are not clearly shown. One explanation of it, which is disclosed by the evidence and was put forward prominently in the oral argument, is not referred to in any of the pleadings, for reasons that appear obvious, nor in the briefs, and that is that this contract with Myrick whereby he was to receive $7,500 in return for certain services in an advisory capacity about the work to be done was a sham to cover up a sale of the $125,000 issue of bonds at a discount of 6 per cent., amounting to $7,500, which could not lawfully be done, as the law under which the bonds were issued forbade their sale at less than par. In fact, the county judge testified, and it was not disputed, that the check for this $7,500 to Myrick was by him immediately indorsed to his principal for whom he bought the bonds, so that it appeared on the face of the transaction that they paid par for the bonds and Myrick was paid the $7,500 under this contract. Myrick was not an engineer nor a roadbuilder, and the court did not trust to him as such but employed one Weed, a civil engineer, to do the work, or about the same work, that was to have been done by Myrick according to this contract. It appears that the bonds could not have been sold at par, and, as the law forbade their sale for less, it was necessary, if they were sold at all, to adopt some device to conceal the real nature of this transaction. But at all events the evidence is sufficient to show that Myrick at the time of the contract between himself and Haden and between Haden and the county was not the agent of the county for any purpose and owed it no legal duty in the matter by virtue of this contract between him and the commissioners or otherwise. If there had ever been any such relation growing out of this contract, it was terminated and so understood by all parties when the county employed Weed as supervising engineer, which was in May, 1912.

The members of the commissioners' court, or a majority of them, knew when they made the contract with Myrick, acting for Haden, that Myrick was getting some commission or compensation out of it for himself, but did not know the amount thereof, nor did they know that Haden would furnish the shell for 55 cents and was giving or would give Myrick all over that as commission. Haden had authorized Myrick to bid as low as 55 cents for the shell and had agreed to give him what he could secure above that. Before accepting Myrick's bid (for Haden), the county commissioners made reasonably diligent

efforts to get better terms, but it seems that only one other party, a concern at Beaumont, was in a position to furnish the shell. This concern made a bid of 65 cents as their lowest possible price. The commissioners were advised by their engineer Weed that this was a "rock-bottom price." Myrick then, for Haden, reduced his bid of 65 cents to 64½ cents and the contract without more ado was awarded to him. It is reasonably certain that the 64½ cents was a reasonable price for the shell at the time and is better than can be done now or at any time since this contract was made. The commissioners' court did not advertise for bids for this shell in any newspaper, though there were two newspapers at the time published in Liberty county. The two commissioners, however, who had the matter in charge were diligent in investigating the matter and in getting prices, etc. The Galveston shell not being desirable on account of its inferior quality and the freight rates, the only person who could have furnished the Sabine Pass shell besides Haden was the concern which made the bid of 65 cents. Haden in his dealings with Myrick and with the county about the contract had no knowledge or notice that there was any relationship between Myrick and the county, or of the contract out of which it is claimed by appellants such relationship of agency or trust arose, but in good faith thought that Myrick was an entirely free agent with whom he could make the contract referred to. The foregoing are the material facts in the case.

We think that it will conduce to a clearer understanding of the matter to decide the questions presented by the assignments of error without confining ourselves to a discussion of the assignments in detail.

[1] We agree with appellants that, if the provisions of the statute (article 640, R. S. 1911) requiring advertisements for bids applies to this contract with Haden to furnish shell, then, as it is undisputed that no such advertisement was made, the contract would be void, and its execution should be enjoined, without regard to whether the contract is or is not an advantageous one for the county. Breath v. Galveston, 92 Tex. 454, 49 S. W. 575; 28 Cyc. 1136; Flewellin v. Proetzel, 80 Tex. 191, 15 S. W. 1043. The statute reads as follows: "When work is done by contract in any county, political subdivision, or defined district, bids shall be invited by publishing an advertisement in a newspaper or newspapers published in such county, and in a paper or papers outside of the county, when the commissioners' court may deem it advisable to do so, and the contract shall be awarded to the lowest and best bidder: Provided, however, that the commissioners' court shall have the right to reject any and all bids." We do not think the statute applies to such a contract. It was not a contract for work to be done by Haden for

the county. It is true that Haden had to do the work of getting out the shell and delivering it to the railroad at the point of delivery, and when a person contracts to sell goods to the county (as in this case possibly implements for doing the work of grading the road, or material, possibly, for bridges) he has first to get the property sold and then deliver it, but no one would ever consider this as work done for the county. It may be, as suggested by appellants, that there was quite as much necessity for requiring contracts for the purchase of material to surface the roads, to be advertised and let to the lowest bidder, as for the actual work of grading the roads and placing the material, but we are not dealing with what the law should have provided, but what it does provide. The Legislature must have contemplated that in building roads under contracts there might arise a necessity for the purchase of material, tools, implements, etc., with which to do the work, clearly distinguished from a contract to do the work, and they did not see fit to provide for advertisement and a letting of contracts to the lowest bidder in such case. We have no authority to supplement this failure to so provide upon any argument that it would have been better to do so. This objection to the contract must therefore be overruled.

[2] If the commissioners' court sold the bonds at a discount, which the law forbids, and entered into a sham contract with Myrick to give him an amount equal to such discount, in consideration of services which he was never expected to perform, it was a very reprehensible thing to do, not excused by the fact that the bonds could not be sold at par. The court got its sole authority to issue the bonds by this legislative act (chapter 2, tit. 18, Acts 627–655, R. S. 1911) and had no right, for any reason, to disregard or evade the plain requirements of article 632 that the bonds should be sold at not less than par. But that is not urged, nor could it be urged, as a ground for canceling this contract with Haden.

[3] We are also inclined to agree with appellants' contention that it is not allowable by parol to contradict or vary the terms of the written contract between Myrick and the commissioners' court as evidenced by his written proposition and the order of the court accepting the same. Article 2276, R. S. 1911; Sayles' Civil Statutes, art. 1554; Gano v. Palo Pinto County, 71 Tex. 99, 8 S. W. 634.

[4] But even in this view it is not at all clear that the services to be performed by Myrick under this contract had anything to do with such a matter as this contract with Haden for the purchase and sale of the shell. The parties themselves did not so understand it, and, even though the parties would not be allowed to say that this contract did not mean what it clearly says, that principle does not prevent a termination of the contract afterwards by voluntary act of the par-

ties to it, and this could be shown by parol, as we have found it was in fact so terminated when Weed was selected as supervising engineer, and thereafter, whatever might previously have been the status of Myrick towards the county in the matter, he ceased to be the agent of the county or to occupy any confidential relation, which in law whatever might have been the moral aspect of it would have interfered with his right to deal with Haden, or Haden's right to deal with him as was done.

If this were a suit by Myrick against Haden to recover the 9½ cents commission for procuring the contract, the case of Providence Tool Co. v. Norris, 2 Wall. 45, 17 L. Ed. 868, would have precise application, and would forbid a recovery of such compensation, even though Myrick was not the agent of the county. Under our findings of fact, the case of Oscanyan v. Winchester Arms Co., 103 U. S. 261, 26 L. Ed. 539, does not apply. The decision in that case turned upon the fact that Oscanyan was the trusted and confidential agent of the Turkish government, from which the contract was procured by the Winchester Arms Company, who had agreed to pay Oscanyan for his services and influence in procuring the contract; the suit being for such agreed compensation. But we think the decision of this case is not controlled by the doctrine of Providence Tool Co. v. Norris. The law might, from motives of public policy, refuse to lend its aid to enforce the contract between Myrick and Haden for the payment of the consideration agreed upon for procuring the contract with the county, but that affords no reason for canceling the contract between the county and Haden. There is this further distinction or point of difference between this case and the one cited: It appears that the contract between the Tool Company and the Secretary of War was procured, without competition, by the active influence of Norris, while in this case the commissioners' court were influenced mainly, if not altogether, and we think altogether, by the fact that the bid proposed by Myrick for Haden was the best that could be done, after diligent effort on the part of the commissioners to get better terms from the only other party with whom they could deal. At least so far as the shell contract was concerned, nothing was done secretly or under cover. The commissioners, or some of them, it is true, expressed a willingness that Myrick should make something out of the contract, and they knew he was making something, but not how much, but they did not appreciate fully that he was making it at their expense. They might, by dealing directly with Haden, probably have made better terms, but we do not think this authorizes a cancellation of the entire contract, or that part of it under which Myrick is to realize his 9½ cents commission. If the contract with Haden is valid, the county

will owe him 64½ cents per cubic yard for the shell, and he, not the county, will pay Myrick his commission.

We have examined carefully the several assignments of error and the several propositions, and our conclusion is that none of them presents any error requiring a reversal of the judgment. What we have said is, we think, all that is necessary to indicate our views upon every material question presented by the record.

The judgment is affirmed.