# CHARLESTON.

COUNTY COURT OF ROANE COUNTY, A CORPORATION *vs.* HONORABLE WM. H. O'BRIEN, JUDGE, *et al.*

Submitted July 17, 1923.    Decided November 6, 1923.

1. COUNTIES—*In Suit to Enforce Expenditure of Proceeds of Bonds Court Confined to Proposition Voted On.*

   On a bill by citizens and taxpayers to enjoin a county court from expending the money realized from the sale of bonds authorized at an election, in the survey, location and construction of a particular road, the circuit court has no jurisdiction, in determining the rights of the parties, to go outside of the specific terms of the order of submission.

2. SAME—*Exact Location of Road Generally Described in Petition Left to Discretion of County Court.*

   When a county court upon the petition of citizens and taxpayers submits a proposition to authorize bonds to build a particular road and does not thereby limit itself to a specific route or particular termini except in a general way, the authority thus granted the county court will be interpreted as leaving the exact location of the road to the discretion of the county court to be exercised under its general power to establish roads, bridges, etc.    (p. 39).

3. . PROHIBITION—*Writ not Withheld Until Court Usurping Powers Passes on its Jurisdiction.*

Where a circuit court on such bill by citizens and taxpayers is proceeding in a suit to enjoin or control the county court in the exercise of such authority and discretion, and prohibition is sought by the county court, the writ will not be withheld until the circuit court has been given an opportunity to pass upon the question of its jurisdiction.     (p. 41).

MEREDITH, JUDGE, dissenting.

Suit by the County Court of Roane County against William H. O'Brien, Judge, and others, for writ of prohibition.

*Writ awarded.*

*Harper & Baker, John W. Lance* and *Harold A. Ritz,* for relator.

*Grover F. Hedges, S. P. Bell,* and *Poffenbarger, Blue & Dayton,* for respondents.

MILLER, PRESIDENT:

By the present proceeding plaintiff and petitioner is asking us to prohibit the defendant and respondent from further entertaining jurisdiction in a certain suit in equity now pending in the circuit court of Roane County, wherein W. W. Ogden and W. B. Carper are plaintiffs and the plaintiff and petitioner herein is defendant. .

Along with the petition, and as a part thereof, there is exhibited a copy of the bill filed in said suit, which is relied on by petitioner to show want of jurisdiction of the circuit court of Roane County, and of the judge thereof, to grant the plaintiffs therein the relief prayed for, or any relief.

From the bill and the exhibits therewith it fully appears that the material facts alleged and relied upon are substantially the same which were before us in the case styled *W. N. Vineyard et al.* v. *County Court of Roane County,* which was in fact a proceeding by said Vineyard and others to review the action of the Attorney General in approving the validity of certain road bonds in the district of Geary, Roane County, the application of the proceeds of which bonds is the principal subject of controversy in said bill. *Vineyard* v. *County Court,* 92 W. Va. 51.

The prayer of the bill is that defendant, the county court

of Roane County, be enjoined, restrained and inhibited from paying out any part of the proceeds of said $120,000.00 bond issue for surveying and locating the relocated road from the residence of G. W. White, leaving Hurricane Creek and crossing the hill to Big Sandy Creek, and up Garner's Branch thereof, across the hill to Amma Post Office, and up said Big Sandy Creek to the bridge at or near the mouth of Left Hand, and from using any part of the proceeds of said bond issue for the construction and building of said relocated road, and further that the said court be likewise enjoined, restrained and inhibited from stopping the work of improving said road at the mouth of Dog Creek, and that it be required to improve the said road to the village of Newton, and for general relief.

The gravamen of the bill is that in the construction of the road authorized, the county court has or is about to depart from the route for which the bonds were voted, contrary to the propsition submitted, and upon which the vote of the citizens of Geary District was taken. As alleged in the bill and appearing from the exhibits, the proposition was to bond said district in the sum of $120,000.00, the proceeds arising from which should be used by said county court in the permanent improvement by grading, draining, bridging and surfacing a certain county-district road described therein as beginning at or near the mouth of Hurricane at hard road from Spencer, Walton to Clendennin, thence the most economical and practical route to intersect the state road from Clay, W. Va., to Spencer, W. Va.; and the further provision to the effect that said route was subject to any revision, re-location, or change which the court or the State Road Commission might deem advisable to obtain grades and alignment thereof, or to reduce the cost of construction, improvement or maintenance. The bill further alleges that upon the filing of said petition, the said county court entered an order, on June 22, 1922, pursuant to section 106 of chapter 112, Acts of the Legislature of 1921, appointing S. P. Whitney to make an investigation and estimate of the cost of the proposed improvement, who in response thereto made his report on July 11, 1922, designating the road as the "Hurri-

cane to Newton Route," and specifying the different elements of cost, all aggregating the sum of $114,720.00.

The bill further alleges that said order of submission contained the following provision: "The court understands and doth so order that the description of the road herein contained is a general description and may be changed as to location from point to point or from place to place when by so doing greater economy of construction is secured or greater good to the citizens of the county and state can be obtained;" that subsequently, on August 7, 1922, the court made the following supplemental order, entitled: "In the matter of the proposed bond election in Geary District: It appearing to the court that by oversight and inadvertence there was omitted from the order entered in this matter on July 11, 1922, the fact that the northern terminus of the said road proposed to be improved as shown in former order is to be at Newton, this county; the court doth now declare it to be its intention if said proposed bond issue be approved at said election to fix the northern terminus of said road at Newton and to locate the same from the bridge at the mouth of Left Hand up Sandy to Newton." It is further alleged in the bill that at the special election called to be held on August 18, 1922, the result thereof as declared by the county court sitting as a canvassing board, was that the said proposition had carried by more than three-fifths majority of all the votes cast at said election.

The bill then recites the subsequent proceedings by said Vineyard, before the Attorney General, and upon the appeal from his order therein to this court; and that our holding was that there was no such uncertainty in the order of submission as to render the order of submission or the election held thereunder void, or to justify this court in nullifying the approval of the Attorney General of the bonds authorized for the construction of the proposed road, and that the supplemental order of the county court of August 7th would bind the county court and prevent a subsequent departure from the original proposition as defined thereby.

The bill then alleges that the engineer who made the report preliminary to the order, based his estimate on the improvement of the road leading up Hurricane Creek and

through Petit low gap to the bridge at the mouth of Left Hand, and thence up Sandy to the village of Newton, which the bill alleges was the only practical and economical route and follows substantially the location of one of the old roads between the points named through said district and which for many years had been the leading main thoroughfare; and it is alleged that at least nine-tenths of the voters, if not all of them, understood and believed that the proceeds of said bond issue would be used in the improvement of said road as above described, as being the most economical and practical route, running from the mouth of Hurricane by way of the bridge at Left Hand to Newton; and as evidence of such understanding, the bill exhibits the affidavits of a large number of persons to that effect.

The bill then further alleges that, disregarding said former proceedings and the wishes of the voters and the best interests of the citizens and tax-payers, the said county court, on January 1, 1923, made and entered an order to the effect that after having gone over and considered the different routes as proposed and suggested and measured the same, and pursuant to the power vested in the court, and believing it to be the most economical route and the one that would accommodate the greatest number of citizens, determined on the following route: "Beginning at the concrete bridge at the mouth of Hurricane Creek, thence up said stream a distance of about two miles to the residence of G. W. White, and from there leaving said Hurricane Creek and crossing the hill to Big Sandy Creek, thence up Garner's Branch thereof, across the hill to Amma P. O., thence up main Sandy to the mouth of Dog Creek." And as a reason for stopping said location at the mouth of Dog Creek, the order concludes as follows: That the said road intersects the proposed State Road at that point, and that therefore it would be useless to locate further at this time; and as an additional reason for stopping at said point, stated that the said road proves to be a greater distance than at first estimated and that the funds available will positively not be sufficient to grade and drain further than to said point. And it is further alleged, that by thus locating the proposed road, not the one reported on by said engineer, the distance between the termini as originally proposed, from

the mouth of Hurricane to the bridge at the mouth of Left Hand, had been increased some two or three miles, and as located by the county court between the beginning point and the mouth of Left Hand, the road crosses two large hills, one of which is steep and precipitous and almost impossible of construction, and which route, it is alleged, is not the most practical and economical one, but that the route by way of Petit low gap is the most practical and economical one; and there is filed with the bill a map or plat illustrative of the contention of plaintiffs in the injunction bill.

And the bill further alleges that after the location of said proposed road by the order of January 1, 1923, defendants with the aforesaid engineer have been engaged in surveying and making an estimate of said road, and that it is their intention to pay for said re-located road out of the proceeds of said bond issue, unless prohibited by the decree of the circuit court.

The bill then goes on to allege additional reasons why the county court should be restrained from paying out the proceeds of the said bond issue, based on alleged economical grounds, and on the ground of the greatest benefit to the greatest number of citizens and tax-payers to be served, and the alleged injustice of appropriating the money voted by the people to purposes not contemplated by the voters at said election. An additional ground for the relief sought is that W. H. Engle, president, and as representing the county court, had declared on the hearing of the protestants before the Attorney General and at the hearing before this court on the appeal from the order and opinion of the Attorney General, that there was no uncertainty as to the location of the proposed road and that it would be located on the old road running from the mouth of Hurricane Creek through Petit low gap; and further that he also made the same declaration prior to the said bond election, to numerous voters, whereby they were misled into voting for the proposition.

On the hearing here respondents not only rely on the matter set up in the original bill, but offer in evidence the entire record of all proceedings had in the cause before the circuit court prior to the filing of the petition for the present writ, including the demurrer, not disposed of, the answer to the

bill, and a number of depositions filed in the cause. The answer denies all the material allegations on which the plaintiffs therein relied for the relief prayed for, and denies that the proposed location is not as practical and economical as the location contended for by plaintiffs in the injunction suit, but alleges that the road as located by the county court would accommodate a greater number of persons, and that it is located on one of the main traveled roads from Newton and points north thereof to the hard road from Spencer, Walton to Clendenin.

We can not deal with all the pleadings in the case before the circuit court. We have but endeavored to state sufficient of the facts to present the main proposition now before us, denied by respondents but affirmed by relators, viz: That the circuit court was without jurisdiction to control by injunction or otherwise the judgment and discretion of the county court respecting the location of the proposed road and the appropriation of the proceeds of the bond issue in the building thereof. In determining this question we consider only the proposition actually submitted and voted upon by the people, authorizing the issue and sale of said bonds; and upon that question we can not consider the alleged representations of the president of the county court pending the election, or afterwards on the hearing before the Attorney General or before this court. We are limited in our investigation to the terms and provisions of the proposition voted upon, fairly interpreted. Now, looking at the proposition as evidenced by the order of the county court submitting it, we find that the proposal was to issue and sell $120,000.00 of bonds for the purpose of improving by grading, draining, bridging, and surfacing a road "beginning at or near the mouth of Hurricane at hard road from Spencer, Walton to Clendenin, thence the most economical and practical route to intersect the state road from Clay, W. Va., to Spencer, W. Va." This is the substance of the proposition presented by the voters themselves in their petition to the county court; and excepting the beginning point, it will be seen that no termini or any of the intermediate points were definitely fixed, either in the petition or in the order of submission. Nor did the supplemental order of the county court, of August 7,

1922, change or modify the original proposition, except to the extent that it was then declared to be the intention of the county court, if the proposition should be approved at the election, to fix the northern terminus of said road at Newton, and to locate the same from the mouth of Left Hand up Sandy to that point. Conceding that the court thereby tied its hands to the location from Left Hand up Sandy to Newton, there is nothing in the order which tied the court down to either of the routes between the mouth of Hurricane and Left Hand; and conceding that the orders of submission and the response to this referendum by the people of the district constituted a contract or quasi-contract between the voters of the district and the county court, the same must be interpreted in the light of the law as laid down in the prior decisions of this court in like cases.

As a part of the proposition submitted, as already stated, it was stipulated in the original order of submission, after the estimate of the cost of the proposed road had been made by the engineer and published as a part of the submission, that the court understood and so ordered that the description of the road therein contained was a general one and might be changed from point to point or from place to place when by so doing greater economy of construction might be secured or greater good to the citizens of the county and state could be obtained; and the order of submission gave notice that the court considered the description a general one, which might be changed as therein provided. The bill makes no allegation that the terms of submission as contained in these orders tied the court to one or the other of the two routes between the original terminus and the mouth of Left Hand. And the question recurs, has the circuit court, on the bill of complaint, jurisdiction to control the judgment and discretion of the county court in expending the proceeds of said bonds in locating and building the road as presently proposed by the order of January 1, 1923?

Our conclusion is that it can not; that if on the bill of complaint, the court should undertake to do so, its judgment or decree would be *coram non judice.* Following two prior decisions, *Chrystal* v. *County Court,* 83 W. Va. 114, and *Brown* v. *County Court,* 78 W. Va. 644, we said in *Vineyard*

v. *County Court, supra,* that when petitioners in their peti-
tion fix definitely but one of the termini of a proposed road,
or both in a general way only, the intention of the voters
must be interpreted as leaving the route of the road to the
discretion of the court, to be exercised under the general
powers of the court to locate and establish roads, bridges, etc.
This law is particularly applicable to the original proposi-
tion submitted to the voters of Geary District, and is no less
applicable to the submission as amended by the subsequent
order of August 7th, for it tied the court down to the inter-
mediate part of the road leading from the mouth of Left
Hand up Sandy to Newton, and then only as to these termini,
not as to the exact route between them.

In *Brown* v. *County Court, supra,* it is laid down, and
particularly applicable to the case here, that when the voters
authorized bonds for the improvement of a road between
designated points and there are two roads between those
points, neither being specifically mentioned in the order of
submission, the county court is vested with ample authority
to determine which of the two it will improve with the pro-
ceeds of such bonds.   In the present case we have it spe-
cifically stipulated in the order of submission, unaffected by
the supplementary order, that the designation of the road
propsed was a general one and might be changed as to lo-
cation from point to point or from place to place, if by so
doing greater economy of construction or greater good to the
citizens of the county and state could be obtained.   It is
manifest, therefore, that the only semblance of right to con-
trol the discretionary power of the county court would be
that the adoption of the location as determined upon rather
than the one advocated by plaintiffs in their bill, would
impose greater expense and disregard the greater good of
the citizens of the county.   But disregarding the denials
in the answer of the county court to the bill of complaint,
we are confronted with the language of the order, that the
description of the road was only general.   The answer shows
that there are two roads between the beginning point and
the mouth of Left Hand to Newton, which substantially
answer the description of the proposed road, neither of
which is specifically mentioned in the order of submission.

This fact alone, if we may consider it, on the authority of *Brown* v. *County Court, supra,* would vest in the county court ample authority to say which of the two locations it would improve with the proceeds of the bonds authorized. Moreover, the bill does not particularize or furnish any facts, except in a general way, supporting its theories of economy and benefits to the greater number of citizens, by the construction of the road as plaintiffs would have it. The discretionary power of the county court can not be controled by slight differences in cost etc. If we could look to the evidence, on this question of jurisdiction, we would no doubt find great diversity of opinion on these questions of fact.    Could the circuit court on the bill filed properly control the judgment of the county court on such a state of facts?   We think not.

But it is contended that this court, out of courtesy, should withhold its writ of prohibtion, until the circuit court has been given an opportunity to determine its jurisdiction and pass upon the demurrer interposed, and that in view of this fact and in view of the fact that the parties have gone on and incurred great expense in the taking of evidence, we should decline the writ prayed for. The answer to this proposition is that no disrespect to the circuit court or the judge thereof could possibly be imputed to us by entertaining original jurisdiction to grant the writ, for as many times cited, prohibition lies as a matter of right where the lower court is without jurisdiction. In *Weil* v. *Black,* 76 W. Va. 685; *Marsh* v. *O'Brien,* 82 W. Va. 508; and *State ex rel. Constanzo* v. *Kindelberger,* 88 W. Va. 131, we distinctly held that it is not essential to the right to apply for the writ, that the question of jurisdiction should have been passed upon by the lower court or that the petitioner has not some other equitable remedy. The case of *State ex rel Cunard S. S. Co.* v. *Hudson,* 93 W. Va. 209, 116 S. E. 511, is distinguishable from the present case by the fact that in that case the court on the face of the proceedings clearly had jurisdiction of the cause. So that, whatever may be the rule in other jurisdictions, it is well settled by our decisions that the writ will not be denied if the court is without jurisdiction.

In view of what has already been said, we think it unneces-

sary to respond to the many other questions discussed in the elaborate briefs of counsel.

Our opinion is to award the writ.

*Writ awarded.*