## BOARD OF SCHOOL TRUSTEES OF LUBBOCK COUNTY v. WOODROW INDEPENDENT SCHOOL DIST. et al.
### No. 4593.

Court of Civil Appeals of Texas. Amarillo.

Nov. 11, 1935.

Rehearing Granted Jan. 13, 1936.

Vickers, Campbell & Evans, of Lubbock, for appellant.

Bledsoe, Crenshaw & Dupree, of Lubbock, for appellees.

MARTIN, Justice.

A mandamus suit was instituted against the county school trustees of Lubbock county to compel them to appoint trustees for rural high school district No. 1, alleging facts intended to show that such district had already been legally created, and in the alternative to issue a writ of mandamus to compel such trustees to form such district, upon facts intended to show such right.

The pleadings of appellants sufficiently raised the fact issue that no such district had been created, and its creation being discretionary with such trustees, a mandamus would not lie to compel the appointment of trustees.

Judgment was that mandamus issue as prayed for to compel the appointment of trustees for such rural high school district No. 1, thus impliedly holding that such district had been legally created. The county school trustees appealed.

The facts were rather fully pleaded, and we pass at once to a recitation of these, as the briefest method of stating the general nature of the controversy as reflected by the pleadings and evidence.

The county school trustees met in March, 1935, to consider, among other things, the creation of rural high school districts for Lubbock county. The formation of several were recommended, including the one in controversy, which was composed of the following: "Slide Common School District No. 1; Barton Independent School District No. 7; Woodrow Independent School District No. 21; New Hope Common School District No. 20, and the Union Common School District No. 3."

This March meeting was a public one, attended by a large number of citizens from different parts of Lubbock county, including many (exact number not shown) from the area in controversy. At this meeting it seems to have been publicly announced and generally understood that the county

trustees would not form such rural high school district in any case where a majority of the citizens within the bounds of an existing school district were opposed to its creation. As we interpret the present record, this was the general policy of such board, known to those in touch with its activities and policies. The territory in the grouping named above exceeded in area one hundred square miles, and hence, under article 2922c, R.S. 1925, an election was necessary. Such an election was ordered in April, 1935, and due notice of same given. In neither the original order shown on its minutes, nor in the face of such election notice, was the condition just mentioned anywhere set out. Instead, both were on their face for a straight election to determine whether or not a majority of the qualified electors within said proposed district desired its formation. The county superintendent of public instruction, as secretary of said board, drew its minutes in the absence of its members for approval at the next ensuing meeting of such board. All the above were drawn by said secretary. At the next meeting objection was immediately made to the form of the minutes carrying said unconditional order, and the secretary then attempted to correct same by a marginal notation on the original minutes. The votes were canvassed of said election and the result declared to be a total within said district of 119 for and 58 against. Union voted 16 for and 25 against. Therefore, in accordance with its pre-election promise, and with its claimed conditional pre-election order, the board refused to create such rural high school district, Union having voted a majority against it. Appellees claim that such district had already been created, and demanded the appointment of trustees. The board refused, and this suit followed. The board thereafter entered a nunc pro tunc order. to make the minutes of April speak the truth. This order is as follows:

"At a called meeting of the County Board of School Trustees held in the office of the County Superintendent on June 12, 1935, the following members were present: D. B. Williamson, Henry Mahoney, K. L. Scudder, Alex Weaver and Earl Davis.

"There came on for consideration the matter of correcting the Minutes of the Meeting of this Board of April 1st, which Minutes are recorded in the Minute Book of the proceedings of this Board on Page 7 thereof. Motion by Scudder seconded by Mahoney, the following resolution was introduced: 'The Minutes of this Board as page 7 of County Board Minute Book do not on their face reflect the transactions and motions of this Board as actually transpired. In order to reflect in the Minutes of this Board the true action of the same in respect to the matters considered on the 1st day of April, 1935, with reference to the calling of elections in Lubbock County for the purpose of obtaining expressions of the will of the people upon the matter of grouping of school districts for rural high school purposes, it was moved by Weaver and seconded by Scudder,

" 'Be it resolved that the resolutions which are recorded as of the Minutes of April 1, 1935, on Page 7 of this Minute Book, be changed to read as follows, which is the true action of the Board had at such time.

" 'Whereas, we, the County Board of School Trustees of Lubbock County, do hereby group the rural schools of Lubbock County into rural high school district, and in such grouping have determined that any district contained in any group that fails to show by a majority vote that it is favorable to the grouping, will be eliminated from such grouping, be it resolved by the Board that an election be held on the 27th day of April 1935 in Group # 1 containing the following school district; Slide Common School District No. 1; Barton Independent School District No. 7; Woodrow Independent School District No. 21; New Hope Common School District No. 20; and Union Common School District No. 3, to determine whether or not it is favored by a majority vote in each and all of such districts that they be grouped together into a rural high school district, and any district failing to approve such grouping by a majority vote within the district will be eliminated from such group.

" 'This resolution is passed to show the intention of the Board in regard to all grouping made on April 1, 1935.'

"Motion carried: Scudder, Mahoney, Weaver and Davis voting 'Yes.'

"[Signed] D. B. Williamson, Chairman,
        "Joseph R. Griggs, Secretary."

It is this instrument just copied that in our opinion largely determines the disposition of this lawsuit. Could this board amend its minutes to make them speak the truth and reflect the true action of the board? If yes, may such amended minutes be impeached by parol evidence in this

proceeding, where there are no pleadings or evidence of fraud, or any attack on same upon equitable grounds, nor any effort shown to have same corrected before the board who made them? If no, did such board have the legal right to place therein the condition mentioned above in its pre-election order? Obviously, if such a condition were illegal, and the election binding in spite of same, the board has no defense here, unless we can say that its discretion to create a district continued after said election, and in spite of same. We are of the opinion that such a board has the inherent right to make its minutes speak the truth, and that in the present state of this record the recitals of the amended minutes are binding on this court, that said condition is a valid one, and that the rights of the parties will be determined as if such original order for the election in question had contained a recital of the said condition, viz., that any district within the grouping not showing by a majority vote that it was favorable to it would be eliminated from such grouping. This conclusion necessarily results in a reversal and rendition of the trial court's judgment. We have reached this opinion of a novel and interesting question upon the following reasoning and authorities:

The status of county school trustees is new to Texas jurisprudence. It apparently more nearly approximates that of county commissioners than of any other Texas office. Such board is a body corporate. Article 2683.

Article 2684 is in part: "At the regular meeting in May, the county trustees shall elect one of their number president; and three trustees shall be a quorum to transact business, and all questions shall be decided by majority vote. The secretary shall keep a true and correct record of all the proceedings of said county school trustees in a well bound book, which shall be open to public inspection."

Article 2681 vests them with certain duties theretofore performed by the commissioners' court. Chapter 11 of title 49, R.S. 1925, and amendments (Vernon's Ann. Civ.St. art. 2676 et seq.), vests this board with practically unbridled authority over the public free schools of the county. Some of its duties are denominated quasi judicial. Davis v. Hemphill (Tex.Civ.App.) 243 S.W. 691.

Because of the novelty of the question at issue, we take the liberty to quote liberally from authorities believed to sustain our conclusion by analogy.

"County boards have authority to amend their records to accord with the facts. The power to make such corrections or alterations is to be exercised by the board alone, either of its own motion or on application to it; the power and duty does not inhere, reside in or rest on the clerk or secretary of the board or on the county auditor. While there is some authority to the effect that either the original entry or an amendment thereof may be transcribed in the formal minutes at any time, this is generally held subject to the limitations that the amendment must be made within a reasonable time and before the rights of third parties have intervened." 15 C.J. pp. 467, 468.

"Section 356, 1 Ballinger's Ann. Codes & St., provides that the board of county commissioners shall cause to be recorded in a book to be kept for that purpose all their proceedings, and that this record shall be kept by the clerk, and shall be open for inspection. Section 335, 1 Ballinger's Ann. Codes & St., provides that the county auditor shall be clerk of the board, attend their meetings, and keep the record. The clerk is simply a ministerial officer, with power to record the truth. If he should fail to record the proceedings correctly, no good reason exists, or can be advanced, why this record may not be corrected. The rule is stated in 7 Am. & Eng. Enc. Law (2d Ed.) at page 986, as follows: 'A board of county commissioners has the same power as any court to amend its records according to the truth, and upon such evidence as the board, in its discretion, may deem sufficient;' and the authorities cited bear out the rule announced. See Commissioners' Court of Lowndes County v. Hearne, 59 Ala. 371; Lapan v. Cumberland County Com'rs, 65 Me. 160; Inhabitants of Levant v. Penobscot County Com'rs, 67 Me. 429; Inhabitants of Gloucester v. Essex County Com'rs, 116 Mass. 579; State v. Central Pac. R. Co., 17 Nev. 259, 30 P. 887; 1 Dill.Mun.Corp. (4th Ed.) § 297. * * *

"Appellant asserts that rights had intervened between the entry of the order as first made by the clerk and the time of the correction. Appellant certainly had no rights which intervened. The status of appellant is the same now that it was at the time the board accepted the bid. It is true appellant may not have known the fact that a condition was attached to the acceptance

of its bid, and may have been led to believe the bid was accepted unconditionally; but there is nothing to show that it relied upon the record to its disadvantage. On the other hand, the term of its contract did not begin for nearly a month after the records were corrected. It was thoroughly understood that a written contract was to be prepared and signed by the parties; so that if appellant had acted upon the first record to its disadvantage, 'no such rights intervened as would preclude the commissioners from making their records speak the truth, even if such right may be precluded at all." Olympian-Tribune Pub. Co. v. Byrne, 28 Wash. 79, 68 P. 335, 336, 337.

"The commissioners' court is a court of record, and speaks through its minutes, and not by the mouths of the members of the body. The proper method to amend the minutes, when they fail to speak the truth, is by a motion made in that court, and not by allegation and proof in another tribunal in which a litigation concerning its orders may arise. This court has held that the orders of the directors of a corporation entered upon the minutes of their proceedings, if intended as an agreement, is itself a written contract. Texas W. Ry. Co. v. Gentry, 69 Tex. 625, 8 S.W. 98 (Galveston term, 1888). The order of a commissioners' court may in like manner constitute a contract, but it does not follow that the proper mode to reform·it is not by a motion in the court where entered to correct the minutes so as to represent truly the order as actually passed by the body." Judge Gaines in Gano v. County of Palo Pinto, 71 Tex. 99, 8 S.W. 634, 635, 636.

"Neither the county nor the publisher could have the contract reformed in the district court in accordance with the expressed intention of the parties when it was made, because the commissioners' court of the county was a court of record, speaking through its minutes, and not by the mouths of its members, and the proper method to reform the contract was to reform its minutes by motion in the court, and not by allegation and proof in another tribunal." Potter County v. Boesen (Tex. Civ.App.) 191 S.W. 787, syllabi quotation, case approved by Supreme Court, 221 S.W. 948.

"The order of the commissioners' court of February 28, 1919, duly recorded in the minutes of said court, reciting the offer of the Avery Company to sell the tractors to appellant, and reciting appellant's unqualified acceptance of said offer and directing that payment be made therefor out of the funds of appellant county, constituted a contract of purchase, evidenced by said order, and parol evidence was not admissible to show said acceptance was not as it recites, but was conditional—conditioned upon certain terms of payment. Article 2349, Revised Civil Statutes; Brown et al. v. Reese, 67 Tex. 318, 3 S.W. 292; Gano et al. v. Palo Pinto County, 71 Tex. 99, 8 S.W. 634; Wagner et al. v. Porter (Tex.Civ. App.) 56 S.W. 560; Fayette County v. Krause, 31 Tex.Civ.App. 569, 73 S.W. 51 (writ refused); Douglass et al. v. Myrick et al. (Tex.Civ.App.) 159 S.W. 422 (writ refused); Mosler Safe Co. v. Atascosa County (Tex.Civ.App.) 184 S.W. 324; King v. Marion County (Tex.Civ.App.) 202 S.W. 1052; Polly, County Judge, v. Hopkins, 74 Tex. 145, 11 S.W. 1084; Potter County v. Boesen (Tex.Civ.App.) 191 S.W. 787; Headlee v. Fryer (Tex.Civ.App.) 208 S.W. 213. * * *

"It is also true, if it is claimed that an order of the commissioners' court, duly adopted and recorded, is erroneous or has omitted something that should have been included, the proper method is to amend the minutes by a motion made in that court, and not by allegation and proof in another tribunal in which litigation concerning its orders may arise. Gano v. Palo Pinto County, supra; Mosler Safe Co. v. Atascosa County, supra; Potter County v. Boesen, supra; Headlee v. Fryer, supra. In any event, if it were permissible to alter, vary, or change the legal effect of an order of the commissioners' court, which in itself constitutes a contract, duly enacted by said court and entered of record upon its minutes, in a case involving such order in another court, which our courts have never held, evidently parol evidence would not be admissible in the absence of pleading setting out the error or respect in which it is claimed the order of the commissioners' court is erroneous, and that same was the result of fraud, accident, or mistake. Gano v. Palo Pinto County, supra; Douglass v. Myrick (Tex.Civ.App.) 159 S.W. 422; Mosler Safe Co. v. Atascosa County, supra. But appellant contends said order of February 28, 1919, is ambiguous and does not express the intention of the commissioners' court, and therefore parol evidence was admissible to explain it and to show the intention of said court. There was no pleading by appellant that said order was in

any way erroneous or entered by reason of fraud or mistake." Colonial Trust Co. v. Hill County (Tex.Com.App.) 27 S.W. (2d) 144, 148, 149.

See, also, King v. Marion County (Tex. Civ.App.) 202 S.W. 1052; Douglass v. Myrick (Tex.Civ.App.) 159 S.W. 422; Dillon on Municipal Corporations (3d Ed.) § 299; Village of Gilberts v. Rabe, 49 Ill.App. 418; McQuillin Municipal Corporations, vol. 2, p. 510.

■■ The appellees neither pleaded nor even claimed that the amended order was fraudulently entered. No attempt was made before the board to secure its abrogation or amendment. Instead, the testimony of the county superintendent was introduced on the trial of this case, which tended to show that the original which he drew in the absence of the board was correct, and that the amended minutes did not reflect the true facts. Thus, parol evidence was used to directly impeach the minutes of the board as corrected. Every board member testified that the corrected minutes reflected the true action of the board. Moreover, the circumstances conclusively, in our opinion, corroborate such members. There is no proposition before this court requiring a discussion of any equitable ground or basis for the impeachment of the corrected minutes by parol evidence. The effect of the appellees' position is that a trial court has the legal right in a collateral proceeding to decide what action the board took, in spite of its corrected minutes made when the matter was first called to the attention of the board, and in the absence of any pleading attacking such corrected minutes upon equitable grounds. We cannot agree with this contention. To illustrate: The commissioners' court votes to raise the salary of an officer $1,000 per annum, but the clerk makes the order read $2,000. The clerk's order is amended to make it speak the truth when the matter is first called to its attention. Can a trial judge decide that the commissioners' court does not know what order it made and enter for it an order allowing a $2,000 salary upon the testimony of the clerk, in the absence of some allegation of fraud or injury? A town council appoints A chief of police, but the secretary writes the minutes for the appointment of B. The minutes are corrected within a reasonable time to speak the truth. Could there be any doubt as to which is the lawfully appointed chief of police? Who is the judge of what a board orders? Who decides during term time the judgments of a court, the court itself or the clerk? Jurisdiction of the board attached in this matter, and we think continued until a formal order was entered delineating the boundaries of the proposed district and formally declaring its creation. During this term, the board's authority was exclusive and supreme over such subject-matter, subject only to the limitations prescribed by statute. There is no pleading and no real basis for any claim that the public was misled to its injury. It conclusively appears that the policy of the board was publicly stated, and must have been generally known, though it was not shown that every voter in the controversial territory knew of the policy and conditions mentioned above. There is no suggestion that the position of anybody was altered to his injury by reason of recitals in the original election order. The board's action comports with the plainest principles of honesty and fair dealing. By statute it is given unbridled power over the formation of rural high school districts. It did not have to call an election. Article 2678a, Vernon's Ann.Civ.St. reads in part: "In establishing high schools, said trustees shall give due regard to schools already located, to the distribution of population, and to the advancement of the students in their studies."

■ The district voting against said grouping was remotely situated from the center of the proposed district. It was nearer the Slaton High School. Did the statute intend that by a majority vote, remote territory could be taken in despite the judgment of the county board that such action was unwise? Has the statute placed no limitation upon arbitrary action of this kind? We think plainly it has, and that this was one of the purposes of lodging with such board plenary power in respect to such matters.

■ This brings us to the only remaining question, viz.: Can such a board legally annex the above condition to its pre-election order? Having the sole power to initiate such a step, and being the exclusive judge of the propriety of such action, we think it may properly predicate the creation of a district upon the condition aforesaid, provided, of course, that a majority vote of the entire district favors same as provided by statute. We quote:

"That any commissioners' court in Texas is within its legal rights in annexing a condition in its pre-election orders which fixes

the exact purpose for which the bond money constituting the proceeds of a bond issue submitted to a vote is to be used. Moore v. Coffman, 109 Tex. 93, 200 S.W. 374. * *

"The result thus obtained has been referred to as having the binding effect and force of a contract. Black v. Strength, 112 Tex. 188, 246 S.W. 79; 19 R.C.L. pp. 1163, 1164; Roane County Court v. O'Brien, 95 W.Va. 32, 122 S.E. 352, 355." Fletcher v. Ely (Tex.Civ.App.) 53 S.W.(2d) 817, 818, 819, writ refused.

Accordingly, we hold that the initial discretion of the board to create the proposed district being absolute, it might exercise same upon a named condition, and that it appearing here that same was so exercised, as conclusively appears from the corrected minutes of said board, the trial court erred in attempting to control such discretion, by granting the writ of mandamus prayed for by appellees. 28 Tex.Jur. pp. 574, et seq., 38 C.J. pp. 689, 690.

Judgment reversed and rendered.

On Motion for Rehearing.

We have concluded that the ends of justice would be better served by reversing and remanding this case rather than reversing and rendering it. We do not deem it advisable to discuss the evidence further in view of another trial. It is obvious that the case was pleaded and tried upon a theory differing from any discussed in the original opinion.

Rehearing granted, and cause reversed and remanded.