

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
~~WILLWILSON~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Maurice R. Bullock
County Attorney
Pecos County
Ft. Stockton, Texas

Dear Sir:

Opinion Number O-2667
Re: Validity of road bonds voted
upon the condition that they
be taken over and assumed
for payment by the State.

We have your letter in which our opinion is requested on the following state of facts:

"A considerable portion of the State highways in Pecos County are what are generally known as un-improved dirt roads, and the citizens of Pecos County are desirous of having these State highways improved and hard surfaced. A plan has been suggested to the County Commissioners' Court whereby an election may be called for the purpose of voting bonds to finance this proposed highway construction and improvement without the county actually in the long run being burdened with the necessity of levying taxes for the payment of such bonds. It has been suggested that the orders and notices for such election might be so drawn as to condition their issuance upon the State Highway Department's using the proceeds thereof for construction, improvement, etc. of roads in Pecos County as State highways, and conditioned further upon House Bill 688 of the 46th Legislature, Regular Session, 1939, being hereafter amended in such manner as to authorize the full assumption by the State of Texas of the payment of all bonds thus issued."

Your question is:

"Will a bond issue thus voted and thus limited be valid, and would bonds thus voted but issued in violation of said conditions be null and void?"

Although your statement of facts contemplates the prepare-tion and passage of orders and the issuance of notice for an election to vote road bonds conditionally, it does not disclose in concrete form the proposition proposed to be submitted to the qualified voters

for their action thereon. Under the law there is no inherent right
in the people to hold elections. See Williams vs. Glover, 259 S. W.
957. Elections may be held only where authorized by law. In the
voting of road bonds we must look to Article 752a, et seq., Title 22,
Chaper 3, of Vernon's Annotated Civil Statutes, for the specific au-
thority to vote and issue them. It will be noted that Article 752b
provides that the election order and notice of election shall state,
first, the purpose for which the bonds are to be issued; second, the
amount thereof; third, the rate of interest; and, fourth, that ad
valorem taxes are to be levied annually on all taxable property within
said issuing subdivision to pay the annual interest and provide a
sinking fund to pay the bonds at maturity. Subsequent articles detail
the steps that must be taken preparatory to voting at this election,
and, likewise, prescribes the manner of holding same. Other articles
under this title prescribe the maturity dates, interest rate and de-
nomination to which bonds issued thereunder must conform.

We call your attention to the following language appear-
ing in Article 752b:

"Upon the petition of fifty resident property
taxpaying voters of any county, the Commissioners'
Court of such county, at any regular or special session
thereof, shall order an election to be held in such
county to determine whether or not the bonds of such
county shall be issued for the purpose of the construc-
tion, maintenance and operation of macadamized, graveled
or paved roads and turnpikes, or in aid thereof * * *"

In our opinion the underscored language in the above ar-
ticle establishes what may be considered the statutory purpose for
which road bonds may be issued and that the use of such language tends
to exclude other purposes, even though related. In other words, the
underscored portion of the above quoted statute appears to be the pur-
pose that the Legislature intended having submitted to the property
taxpaying voters of any county whenever the proposition for the issuance
of road bonds is submitted to them for their action thereon.

For purposes of this opinion we must assume that it is
your intention to submit a proposition to the voters of your county
containing a purpose phrased at set forth in Article 752b, hereinabove
underscored, and in addition thereto it is planned that the orders and
notices, as well as the petition, shall provide that in the event the
bonds are authorized the proceeds thereof shall be used only for the
construction and improvement of State highways within the county and
then only in the event that House Bill 688, Forty-sixth Legislature,
Regular Session, 1939, is so amended as to make such bonds 100%
eligible for participation in the State gasoline tax fund allocated to
the Board of County and District Road Indebtedness. We feel it
necessary to restate your proposition in order that our answer shall

be clear. This question differs from the problem presented in the
Moore vs. Coffman case, 200 S. W. 374, wherein the general rule is
stated that the purposes for issuing bonds stated in the petition,
order and notice of the election determines for what purposes the
bonds were issued, and that the voters have no right to rely upon any
other statement or order for ascertaining the purposes for which
bonds are to be issued. In the instant matter the conditions are
made a part of the petition, order and notice, and, therefore, become
without question a part of the election proceedings, and in view of
the language used by the Supreme Court in the above mentioned Moore vs.
Coffman case, we think that a condition might properly be inserted in
the preelection orders. We quote the following from the opinion in
that case:

> "That any Commissioners' Court in Texas is
> within its legal rights in annexing a condition in
> its preelection orders which fixes the exact purpose
> for which the bond money constituting the proceeds of
> a bond issue submitted to a vote is to be used."

In view of the foregoing quotation we think it would not
be unlawful to annex the further condition that the bonds should not
issue except upon the happening of some named event. The result thus
obtained would have the effect and force of a contract. See Black vs.
Strength, 246 S. W. 75; 19 RCL, pages 1163 and 1164; Roane County Court
vs. O'Brien, 122 S. E. 352 and 355; also Fletcher vs. Ely, 53 S. W.
(2d) 817 (Writ Refused). We, therefore, conclude that if the bonds
are voted for the straight statutory purpose, that is, "for the con-
struction, maintenance and operation of macadamized, graveled or paved
roads and turnpikes, or in aid thereof," that the proceeds be used for
the construction of State designated highways, and that the issuance
thereof is conditioned upon House Bill 688 being amended in a manner
so as to permit the participation of such bonds to the extent of 100%
in the State gasoline tax fund allocated to the Board of County and
District Road Indebtedness, that such bonds would not be rendered ipso
facto void because of the inclusion of such named condition in the
proceedings. We conclude further that without the happening of the
last stated contingency the bonds could not be lawfully issued.

It seems clear from your letter and statement of facts
that the principal thought underlying this suggested method of voting
and issuing road bonds is that House Bill 688 shall be amended in such
manner as to permit the "full assumption" by the State of the payment
of all bonds thus issued. If this were not possible it is reasonable
to assume that the property taxpaying voters of your county would
perhaps react unfavorably to the authorization of further debt for road
construction within the county. We think it advisable to call your
attention to the following language appearing in the present "Road
Bond Law", commonly known as House Bill 688, Section 8 thereof read-
ing, in part, as follows:

"No provision of this Act shall be construed
. . . . to pledge the credit of the State in any
manner whatever for the payment of any of the out-
standing road indebtedness herein referred to of the
county or districts of the State. It is hereby declared
that all eligible indebtedness, as herein defined, shall
remain indebtedness of the respective county or defined
road district which issued it, and said counties or de-
fined road districts shall remain liable on said indebted-
ness according to its terms and tenor; and it is not the
purpose or intention of this Act or any part hereof to
obligate the State of Texas directly or indirectly or
contingently for the payment of any such obligations, or
that the State of Texas should assume the payment of
said obligations, and this Act is not to be construed
as obligating the State of Texas to the holders of any
of said obligations to make any payment of the same of
any part thereof; nor shall such holders have any right
to enforce the appropriation of any of the moneys here-
inabove provided for; nor shall any provision hereof
constitute a contract on the part of the State to make
money available to any county for the construction of
additional lateral roads, but the provisions hereof are
intended solely to compensate, repay and reimburse such
counties and districts for the aid and assistance given
to the State in furnishing, advancing and contributing
money for building and constructing State highways and
lateral roads * * *".

It will be seen that House Bill 688, and its predecessors,
have been and are nothing more than appropriation bills. Biennially
the Legislature appropriates one-fourth of the gasoline tax to the
credit of the County and Road District Highway Fund to be used for the
purposes specifically set forth in the Act. Section 6, subsection
(j) of House Bill 688, constitutes the appropriation clause of the Act.
The constitutionality of this Act would be seriously questioned if
the terms thereof should contemplate a pledging or an appropriation of
one-fourth of the gasoline tax to the purposes defined in the Act for
a period of longer than two years. Section 6, Article 8 of the Con-
stitution, reads, in part, as follows:

"No money shall be drawn from the treasury but in
pursuance of specific appropriation made by law; nor shall
any appropriation of money be made for a longer term than
two years * * *".

It seems clear that any amendment to the present Road
Bond Law which would contemplate the "full assumption" by the State of
the payment of all bonds issued in accordance with the suggested plan
would be unconstitutional and at once the condition sought to be imposed
by the voters of your county loses much of its force. Under the terms

of House Bill 688 the road bonds of the various counties under certain conditions become eligible for participation in the funds accruing to the Board of County and District Road Indebtedness, and so long as such funds accrue to the Board through the collection of gasoline taxes and the subsequent appropriation by the Legislature, the principal and interest of bonds made eligible for participation can be legally paid by the Board to the extent the funds on hand available for that purpose will apply. We quote the following significant language from subsection (g) of Section 6 of House Bill 688:

"In the event the amount so estimated to be applied to the payment of eligible obligations for any county or defined road district is sufficient to meet all maturing interest, principal and sinking fund requirements, the Commissioners' Court may dispense with the collection of ad valorem levies for such calendar year for such interest, principal or sinking fund requirements. In the event the amount of payment so estimated to be applied is not sufficient to meet the maturing interest, principal and sinking fund requirements, the County Commissioners' Court shall collect from taxes on the property in said respective counties and defined road districts an amount of money equal to the difference between the amount of such requirement and the amount available for application."

This subsection further provides that in the event the amount of funds available for application to meet the maturing interest, principal and sinking fund requirements in any year is not sufficient to satisfy such requirement, then the funds shall be prorated in the manner prescribed therein. In other words, this and foregoing quotations, plainly and forcefully operate against the "full assumption" by the State of any bonds.

It is entirely possible that House Bill 688 might be so amended by the next session of the Legislature as to permit of a full participation by bonds of the type sought to be voted in your county, but there can be no guarantee that succeeding legislature will re-enact laws and make sufficient appropriations to provide for the full payment of such bonds prior to maturity thereof; and as can be seen from the above quoted portion of the existing Act, any time in the future that there may be an insufficiency in the fund to meet the maturing principal and interest in any year, it immediately becomes the duty of the Commissioners' Court of the county to levy a tax in such an amount as will provide the additional sum necessary to promptly pay the maturing interest and principal when due. In other words, the obligation, of necessity, must remain the primary obligation of the county voting the same, and the property of the taxpayers of said county remains liable to taxation in such proportion as is necessary to make up the insufficiency of the gasoline tax fund. It is apparent

that there can be no legal "assumption" of the bonds.  The bonds become eligible for participation in the fund and to the extent funds are available to meet that participation each bond stands on a parity with all other bonds made eligible for participation.

In view of the foregoing we reach the conclusion that a road bond election would be rendered wholly ineffective if the ultimate issuance of such bonds was conditioned upon a "full assumption" of the payment thereof by the State.  However, this would not be true if the annexed condition contemplates and provides only for the issuance of such bonds upon a change being made in the present law permitting them to participate to the extent of 100% in the gasoline tax funds allocated to the Board of County and District Road Indebtedness.  A "full assumption " could mean nothing less than an absolute release of the county from any liability or obligation to pay such bonds, and this, we believe, could not be done under the present Constitution.

We concede that the immediately foregoing discussion is not necessary to a proper determination of the question propounded in your letter, but in view of the widespread misinterpretation as to the extent of the obligation of the State under the terms of House Bill 688, we think it necessary to give you the benefit of our views as to the ultimate effectiveness of the present law and as to the likelihood of a subsequent Act being passed making possible a more binding "assumption".

Trusting that the foregoing satisfactorily answers your inquiry, we are

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By s/ Clarence E. Crowe
Clarence E. Crowe
Assistant

CEC-s-wc

APPROVED DEC. 18, 1940
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By BWB Chairman